Huston, J.
This-was an ejectment brought by. the defendants in error, who were plaintiffs below, against John Stouffer, and *436 Clement; Burleigh. Burleigh, who was the landlord of Stouffer, died, and his executors were substituted defendants. The plaintiffs, who claimed as heirs at law of one Alexander M'-Gready, gave in evidence a title from the Commonwealth, which became vested in one Marshal, who entered into articles of agreement to eonvey five acres to Alexander M'-Gready. M'Gready laid the property out in lots for a town, and called it Mount Pleasant. One of those lots was the subject of the present suit. Alexander M'Gready died before he received a deed from Marshal, and, on the ISth of February, 1S07, a deed was made to J. Edgar and J. Gallaway, the guardians of M'Gready’s children; in trust, &c.
The plaintiffs, after the above evidence, also read the deposition of J. Edgar, one of the guardians of M'Gready’s children, which was rather in anticipation of the defendants’ defence.
The defendants then gave evidence of a parol agreement between^Alexander M'-Gready and his brother Patrick M'Gready, by which the lot in question was sold to Patrick for forty dollars; that the brothers settled their accounts, and Alexander owed Patrick twenty dollars, which it was agreed should be considered as part payment of the lot. Patrick was to go as a hand on a voyage, which Alexander contemplated, to New Orleans, and the residue’of the price was to be kept out of his pay. He did go as a hand; Alexander died down the fiver. The bargain was proved by other witnesses, to whom Alexander related it. There was a small cabin on the lot, and Patrick lived in the cabin at the time of the contract. There was an application to the legislature in February, 1807, immediately after the deed for the five acres had been made to the guardians of M'Gready’’s children; in which the guardians stated, that the title was in them, and that Alexander M'Gready, in his lifetime, had by parol contract agreed to sell sundry lots to different persons, naming them, of whom Patrick M'Gready was one ; that he had received the whole, or part of the purchase money, &c., and praying the legislature to pass an act, authorizing them to convey the said lots.' On the 7th of April, 1807, the act passed, authorizing them to convey the said lots to the persons who had contracted with Alexander M'Gready, and paid him, or-should pay the guardians, or secure to them the payment of the money. See 8 Bioren's Acts, 164, 165.
The defendants then gave in evidence the deed from J. Edgar and J. Gallaway to Patrick M'Gready, dated the 10th of July, 1809; and on the 19th of July, 1809, Patrick conveyed to Clement Burleigh.
John Edgar had stated in his deposition'before mentioned, that Clement Burleigh had been very active in' procuring depositions, &c., to accompany the petition to the legislature; that he, Edgar, had not understood that Patrick M'-Gready alleged that he had paid the whole of the consideration money to his brother, *437 until after the act of assembly was obtained; and that he, Edgar, had refused to admit the fact that the money had been paid, and had refused to convey to Patrick.
To March Term, 1808, No. 37, Patrick M(Gready had brought a suit against Edgar and Gallaway, the guardians, in which he stated the contract, the possession, and payment of the price, the act of assembly, &c., the refusal of the guardians to convey, &c., whereby action had accrued to him, &c. To this, the guardians, Edgar and Gallaway, appeared and pleaded, so as that issues were joined on the facts of contract and of payment,of the consideration. The cause was tried in June, 1809, and a verdict given for the plaintiff, which, when moulded into form, would be a verdict for the plaintiff for five hundred dollars damages, to be released on the defendants’ executing a deed. I say the verdict might fairly be reduced to this. No motion for a new trial or in arrest of judgment was made. On the 10th of July, the guardians made a deed. At the next term, judgment was entered on the v.erdict. This was afterwards struck off by the court, on -a receipt for the deed being produced, and no subsequent entry was made in the cause-
The defendants offered this record in evidence, which was objected to, rejected by the court, and a bill of exceptions taken.
Generally, the decision of a court of concurrent jurisdiction, on the matter in dispute, is as a plea or bar, and as evidence where it cannot be pleaded, (as in ejectment in this state,) conclusive between the same parties, upon the same matter coming directly in question.
if the guardians had doubts of the fairness of the allegation of Patrick M‘Gready, they were right in requiring him to make out. his case before a jury. Whenever parties are bound by a decision, so also are privies in blood, in estate, and in law. This trial was then oh the very points now in dispute, before a competent tribunal, and between proper parties, and so far within the above rule.
But it is objected, there was no judgment on the verdict, and therefore the court were right in rejecting it. Where our jurisprudence compels us to attain the end of justice by different means, and through courts different from those in England, or the neigh-bouring states, we must adapt our decision's to our own modes of proceeding. If this state had a Court of Chancery, the application of Patrick M‘Gready would have been to that court. The Chancellor might, and probably would, have directed the same points to be decided by a jury. On such a feigned issue, I believe a judgment would not be entered, but the facts found would be certified to the Chancellor, who would found his decree on that verdict, and decree a deed, and, in any future contest, such decree, and the previous proceedings, including the feigned issue, and verdict, would be evidence; and, unless proved to have *438 been obtained by fraud and collusion, conclusive. Instead of a suit in Chancery, and a decree, we have in this-case an act vesting the power to convey in the guardians; and, instead of the feigned issue, a real one. No judgment entered, because the acquiescence of the -guardians, and their execution of the deed rendered one unnecessary. And the want of a judgment of the court comes badly’from those who prevented it by instantly conveying. On principle, then, I would consider this as what it was, in fact, a legal determination of the matter now contested, and which would be evidence for the guardians in a suit by the heirs against them; -and is evidence for those claiming under Patrick M'Gréady. It was once litigated, and determined by proper authority, and with ■ proper parties, and ought not again to be disputed.
There was other evidence given, which it is not necessary to repeat. It would seem that every question now made had been decided by that verdict, and, unless that verdict is destroyed, by proving that it was obtained by fraud and collusion, which is not alleged, it would be difficult to find a reason for going beyond it.
Sundry exceptions were made to the charge of the court, about the precise meaning of which the counsel do not agree.' If, as I incline to believe from the whole charge, the Court, of Common Pleas was of opinion that the case was to be tried and decided, precisely as if the before-mentioned private act had never been'' passed, I do not agree with that court. One of the1 counsel has distinctly contended, that the legislature had no power to pass such a law. If such were-the case, it would be very unfortunate, for we have many such acts, and property to an immense amount has been paid for, and is held under them. It is mistaking and mistating the question, to call this an act divesting those children of their estate. It may and does happen, that, from infancy, or idiocy there exists property, and no person has power to convey that property. Justice to other persons, as well as the best interests of infants or idiots, may require that a conveyance of it should be made. I know of no principle of public policy, or of law, of no provision of the constitution, which forbids -the legislature to vest in some person the power to convey in such cases; but a law, giving such power to convey, would be worse than nugatory, if the conveyance, when made, was of no validity. A power to supply,the want of trustees, to enable some person to- complete' defective titles, instead of, and for the use of infants, and others, must exist somewhere in every government. If not expressly given by the law or the constitution, it would seem to reside in that branch of our government which has usually exercised it. Even in England, an act of parliament is sometimes necessary to assist the almost unlimited power,of a Chancellor. Á conveyance made by persons, authorized by the legislature to convey, must then, it would seem, at least bc prima facie evidence of good title in the vendee, against all claiming-under the vendor. And where *439 such conveyance has, as in the present case, been made after a solemn trial and decision of certain material facts; such conveyance ought to conclude as much as a conveyance made by an owner in full life. In other words,' as much as if Alexander M‘Gready had been alive in 1809, and had himself executed the deed, as is directed by the act. Any other construction of this, or of similar acts would produce injustice and ruin of vast extent. Property of little value sold, and improvements of great value put on it; lots of forty or fifty dollars, rendered worth one or two thousand dollars by brick houses; minors supported by the price of the lots, or the debts of the deceased paid by them; a fair price at the time obtained and faithfully applied; all this is not to be unravelled and swept away by old cases, never adopted in this state, that the parol may demur in all cases affecting lands, nor by nice disquisitions on the powers of our legislature; which powers have been exercised from the commencement of the government, are beneficial, nay necessary; and cannot now be questioned, and, in my opinion, never could have been.
Judgment reversed, and a venire facias de novo awarded.