REYNOLDS VS. SCHMIDT.

*Probate Court—Administrator's sale—Sufficiency of record.*

1. The omission of an administrator, in his petition for leave to sell real property of his decedent for the payment of debts against the estate, to state the *value* of the personal property which came to his hands, as required by sec. 2, ch. 65, R. S. 1849, will not avoid the sale, where the facts appear which are mentioned in sec. 52 of that chapter.
2. By "the probate court having jurisdiction," in subd. 1 of said sec. 52, is meant the probate court of the county where the deceased resided at the time of his death, or within whose jurisdiction the land sold is situate.
3. An affidavit of publication of an order of the probate court upon parties adversely interested, made by the "proprietor" of the paper in which the order was published, *held* to be sufficient.

ERROR to the Circuit Court for *Jefferson* County.

The action below was ejectment, commenced May 6th, 1864, by *Mary E. Reynolds* against *Gottlieb Schmidt*, for seven thirty-sixth parts, undivided, of sixty acres of land. The complaint was in the usual form. The defendant, by his answer, claimed to be the owner in fee of the whole of said tract, and entitled to the possession. For a further defense he alleged, that in 1851 one Hiram Hall entered into possession of said land, claiming to be absolute and sole owner thereof in fee, founding his claim upon a deed of conveyance executed 3d June, 1851, by

William Pickle, as administrator of the estate of Thomas Carrol, deceased, in pursuance of the judgment and direction of the county court of said county ; and that said Hall remained in the continual occupancy of said land till 4th September, 1854, when he sold and conveyed it to defendant, who entered into possession on the 7th of the same month, claiming to be sole and absolute owner in fee by virtue of said conveyance, and has ever since occupied and possessed the land, so claiming title ; and that more than ten years had elapsed since plaintiff's right of action, if any, accrued.

On the trial, plaintiff showed herself to be one of the heirs of Thomas Carroll, who died in 1850, seized of the whole eighty acre tract of which the land in question was a part, and left a widow and seven children, two of whom had died unmarried. The defendant showed that letters of administration on the estate of said Thomas Carroll were issued by the county court of said county July 15th, 1850, to William Pickle. He then read in evidence, against plaintiff's objection, the following papers : 1. A petition of said William Pickle, as such administrator, which gives a schedule of debts outstanding against said estate, amounting to $169.84, and proceeds thus : "Your petitioner further represents that said deceased died seized of the following described piece of land [here follows a description of said eighty acres] ; that said land is worth about six hundred dollars ; is timbered land," &c. &c. "And your petitioner further represents, that no personal estate of said deceased has come to his hands except what was brought to him by the widow of said deceased, now wife of your petitioner, to wit : One yoke of oxen, one cow, two heifers, five hogs, five sheep, one wagon, one grindstone, one stove, one fanning mill, two iron kettles, one log chain, and one old hoe ; all of which remain undisposed of in your petitioner's hands." 2. The order of the county court, July 16th, 1850, which recites that "on reading and filing" said petition, "showing that in order to pay the debts of said deceased it is necessary to sell the

whole or some portion of said real estate, and praying that license be to him granted to sell said real estate, it is ordered that said petition be heard on the 2d day of September," &c., in the usual form. A copy of the order is directed to be published for four successive weeks in the "Democratic State Register," a weekly newspaper published in said county. 3. The affidavit of E. B. Quiner, 2d September, 1850, annexed to a printed copy of said order, which states that the affiant is *proprietor* of the aforesaid paper, and that said notice had been published, &c. &c. 4. The order of the county judge, of the same date, which recites the hearing of said petition, the filing of said affidavit of Mr. Quiner; that it satisfactorily appeared to the court that a sale of said real estate was necessary &c.; and that no adverse appearance or objection had been made; and directs that said administrator be authorized to sell said land; that before making such sale he take and subscribe the oath required by the statute, and cause notice of the time and place of the sale to be posted, &c. &c. in the usual form. 5. The oath of said administrator. 6. Affidavits of the posting and publication of the notice of sale as required in said order; also the administrator's report of the sale, and the order of the county court confirming the same, by which it appeared that the premises were sold to Hiram Hall for $507.50, February 4, 1851; also an administrator's deed of said land, executed to said Hall in the usual form. 7. A warranty deed of the premises from said Hall to defendant, dated September 4, 1854; with proof that Hall occupied the land under his deed from its date till he sold to defendant, and that defendant had been in possession since that time.

The jury, by direction of the court, found for the defendant; and the plaintiff seeks to reverse the judgment.

*Enos & Hall*, for plaintiff in error, to the point that the petition for leave to sell should have shown the amount in money of the personal estate that had come to the administrator's hands, cited R. S. 1849, ch. 65, secs. 1, 2; *Kane v. R. R.*

*Canal Co.*, 15 Wis., 188; 4 Peters, 466; *Hunt v. Wick-liffe*, 2 id., 211 2. As to the insufficiency of the proof of publication, they cited R. S., 1849, ch. 65, sec. 5; ch. 98, sec. 65; *Hill v. Hoover*, 5 Wis., 371; *Gibbs v. Shaw*, 17 Wis., 197; *Schneider v. McFarland*, 2 Coms., 459; *Sibley v. Waffle*, 16 N. Y., 180; *Falkner v. Guild*, 10 Wis., 564; *Wanzer v. Howland*, id., 9; *Rape v. Heaton*, 9 id., 328; *Pollard v. Wegener*, 13 id., 569; *Gibson v. Roll*, 30 Ill., 172; *Whitney v. Porter*, 23 id., 447. 3. It does not appear that the probate court heard the allegations and proofs of the petititioner. This was an absolute prerequisite to the making of the order. The authority of the court must appear affirmatively on the face of the record. R. S. 1849, ch. 65, secs. 5, 6, 7, 8, 12; *Sheldon v. Wright*, 1 Seld., 497; *Sitzman v. Pacquette*, 13 Wis., 301; *Grignon v. Astor*, 2 How. (U. S.), 341; *Bloom v. Burdick*, 1 Hill, 130; *Voorhees v. Bank of U. S.*, 10 Peters, 449; *Harvey v. Tyler*, 2 Wallace, 328; *Sibley v. Waffle*, and *Kane v. Canal Co.*, *supra*. 4. The court could only order so much of the real estate sold as was necessary to pay the debts, unless it should appear and be expressly determined that the residue would be greatly injured by the sale of a portion. The land sold was worth $600, and the debt was $167. Without some evidence before the court to show that one forty could not be sold without injury to the remainder, the order was *prima facie* a fraud upon the infant heirs. Sec. 7, ch. 65, R. S. 1849.

*Gill & Barber*, for defendant in error:

1. The statute (R. S. 1849, ch. 65, sec. 2) requires the administrator's petition to set forth "the *amount* of personal estate that has come to his hands." This relates to the *quantity*, rather than to the value. The administrator is not required to *appraise* the personal estate; the probate court was already informed of the value by the inventory and appraisal. Ch. 69, secs. 1–4. 2. The declaration that no personal estate was brought to the petitioner's hands, "except what was brought to him by the widow," now his wife, shows that the same came

to him not as administrator but as husband of the widow.   See
R. S. 1849, ch. 68, sec. 1, subd. 1, and ch. 69, sec. 5.  3.  Under
ch. 127, Laws of 1861, the determination of the probate court
is to be treated as that of a court of general jurisdiction; and
jurisdiction is presumed until the contrary is shown.   4.  The
several objections urged against the record, if otherwise good,
are cured by sec. 52, ch. 65, R. S. 1849.   All the facts there
required, appear from the record.

Cole, J.   The simple question in this case is, whether the
proceedings of the probate court divested the heirs of Thomas
Carroll of the title to the real estate of which he died seized.
It is claimed that they did not, for several reasons.   In the first
place, it is said that the petition of the administrator for
license to sell the real estate of the deceased did not contain
the special facts necessary to authorize the court to grant the
license, because it failed to set forth the amount of the "per-
sonal estate that has come to his hands," as required by section
2, chap. 65, R. S. 1849.   There was an enumeration of the ar-
ticles of personal property, but the value of these articles is not
stated.   Does this defect in the petition render the proceedings
void?   The language of the petition upon this point is a little
ambiguous.   It is as follows:  " And your petitioner fur-
ther represents that no personal estate of said deceased has
come to his hands, except what was brought to him by the
widow of said deceased, now the wife of your petitioner, to-
wit: 1 yoke of oxen," &c., giving a list of the personal proper-
ty.   Now it is said, in answer to the objection just suggested,
that this shows that there was really no available personal es-
tate in the administrator's hands, but that the enumerated prop-
erty belonged to the widow or had been assigned her by the pro-
bate court under the statute, and therefore was not assets.   The
language of the petition is perhaps susceptible of this construc-
tion, although it does not seem to me to be the natural one to
place upon it.   Assuming then that this personal property be-

longed to the estate of Thomas Carroll, does it follow that the proceedings are void, because its value was not stated in the petition ?   We think not, but that this defect in the petition for license, if otherwise valid, was cured by section 52 of this chapter.   That section provides that "in case of an action relating to any real estate sold by an executor, administrator or guardian, in which an heir or other person claiming under the deceased, or in which the ward  or any person claiming under him, shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear,  1. That the executor, administrator or guardian was licensed to make the sale by the probate court having jurisdiction :   2. That he gave a bond, which was approved by the judge of probate, in case a bond was required upon granting a license :   3. That he took the oath prescribed in this chapter :   4. That he gave notice of the time and place of sale as in this chapter prescribed : and 5. That the premises were sold accordingly, and the sale confirmed by the court, and that they are held by one who purchased them in good faith."   Now, if any force or effect is given this section, it must effectually obviate the objection taken to the petition, that it failed to state the value of the personal property which came to the hands of the administrator.   For it expressly declares that the sale shall not be avoided on account of any irregularity in the proceedings, provided the five specified facts appear.   This is equivalent to saying that the sale shall not be avoided when it appears that those things exist, even though errors and irregularities should be discovered in the proceedings.   The defect in the petition, of omitting to state the value of the personal property in the hands of the administrator, is not such an irregularity as avoids the sale.   For when the above named material and fundamental facts or requirements exist or appear to have been complied with, minor irregularities are to be disregarded.   This is the plain and obvious meaning of the statute.

But it is said, when this section provides that a sale shall not

be avoided on account of any irregularity in the proceedings, if it appears that the administrator was licensed to make the sale by "the probate court having jurisdiction," we must not understand the probate court of the county where the deceased resided at the time of his death, and within whose jurisdiction the land sold is situated, but that the state of facts was such as to give the probate court jurisdiction or authority to grant the license in the particular case ; in other words, that all the special facts were stated in the petition and made to appear to the probate court, which were essential and necessary to give the court the right to grant the license for the sale which was made. This, however, is giving the statute a construction quite too narrow and restricted. It is in effect saying that if there was any defect in the matters set forth in the petition, any irregularity in the proceedings before granting the license, this should render the sale invalid. According to this view, all facts calling into exercise the power of the court became jurisdictional facts, and must appear upon the record. And when the validity of a sale made is questioned in a collateral suit, the court must review the whole proceedings in the probate court as upon a direct appeal, and declare them void when not legitimate and regular. Are we to consider the matter in the same light as though the question was before us, on an appeal, of granting a license on this particular petition ? Had those interested in the estate taken an appeal from the order of the probate court granting the license, it might be competent to inquire whether the petition was defective for not stating the value of the personal property. It seems to us too late now to go into that matter, particularly in view of a statute which says that the sale shall not be avoided when certain facts exist. And by "the probate court having jurisdiction" is obviously meant the probate court of the county where the deceased resided at the time of his death, and which had jurisdiction of the estate. To give the statute any other construction, it seems to us, would be nullifying its provisions. The first objection taken to the

proceedings in the probate court must therefore be overruled. And what we have said upon this point is equally applicable to the third and fourth points of the brief of counsel for the plaintiff in error.

Again, it is said that the order of license could be made only upon proof that the order to show cause had been published as required by law, and that the record did not show that any such publication was made. This objection is not sustained by the record. There is an affidavit showing a proper publication of the notice of the time and place where the application for a license would be heard. This affidavit, however, was made by the "proprietor" of the newspaper, and it is insisted that it could only be made by the "printer" or "foreman" of such printer. We think the affidavit might be made by the proprietor, and that the decision of *Hill v. Hoover*, 5 Wis., 371, is inapplicable to this case.

The last objection is, that the sale is void because the administrator did not give a bond as required by sections 8 and 52. It does not appear that any bond was required to be given under section 8, the probate court doubtless considering the bond already given by the administrator as sufficient.

The conclusion at which we have arrived is, that the judgment of the circuit court is correct, and must be affirmed.

*By the Court.*—Judgment affirmed.