Culbertson vs. Coleman.   (Cross Appeals.)

CULBERTSON vs. COLEMAN.   (Cross Appeals.)

PROOF OF TITLE TO LAND.   *(1) Evidence of title by patent from U. S.: Certificate of entry: Presumption.   (2) Constitutional law:   Act authorizing sale of decedent's land by executor, held invalid.   (3, 4) Effect and proof of deeds of confirmation by true owners.*

1.  A certificate of the register of a U. S. land office in this state, in the form prescribed by sec. 4166, R. S., is evidence that the person therein named became entitled, by the purchase there certified, to a patent from the United States of the land described; and after a lapse (in this case) of twenty years from the entry and purchase, it will be *presumed* that a patent was issued to the purchaser, as the law requires.

2.  Ch. 51, P. & L. Laws of 1866, in terms empowers J. W., executor of the last will of F. B. W., deceased, to sell all real estate in Wisconsin of which F. B. W. died seized; and it contains no recitals showing that the parties interested consented to the grant of such power of sale, or were under any disability, or showing any reason for such grant; nor was any reason therefor shown at the trial hereof, in which plaintiff claimed under a deed of such alleged executor.   *Held,* that, under the evidence, the act appears to be *invalid,* as an attempt to transfer by special act the property of a person not under disability, without his consent, to another person.

3.  The executor having undertaken to sell and grant the lands of said F. B. W. on behalf of the persons then interested in them, deeds of the land from such persons to the executor's grantee, confirming the sale. would take effect as of the date of the executor's deed, except as to persons claiming under such parties by deed subsequent to the executor's sale and prior to such deeds of confirmation.

4.  But deeds of confirmation purporting to be executed by heirs and residuary legatees of the testator are insufficient, without proof that the title in fact passed to such grantors.

APPEALS from the Circuit Court for *Oconto* County.
The case is thus stated by Mr. Justice TAYLOR:
VOL. XLVII. — 13

"These appeals are taken in the same action, of ejectment for the recovery of three separate parcels of land. On the trial in the court below, the plaintiff obtained a verdict for one of the parcels described in his complaint, and the defendant had a verdict in his favor for the other parcels. The plaintiff appealed from so much of the judgment as found that the title to the two parcels was in the defendant; and the defendant appealed from that part of the judgment which found that the plaintiff had title to the remaining parcel. Both cases were argued together, and but one opinion will be necessary in disposing of the two appeals.

"The plaintiff, to show title to the lands on his part, offered in evidence two certificates of the register of the land office at Menasha, in the form prescribed in section 4166, R. S. 1878, showing that a part of the lands in question had been entered, purchased and paid for by Stephen H. Hicks on the 20th day of June, 1856, and part had been so entered, purchased and paid for by one John W. Greenman on the 12th day of July, 1856. These certificates were objected to by the defendant as not being evidence of a legal title to the lands in said Hicks and Greenman, but this objection was overruled by the court. The plaintiff then traced his title through several conveyances from Hicks and Greenman, and their grantees, to one Thomas A. Follette. He then introduced a mortgage dated the 7th day of September, 1857, given by the said Follette and wife to William Kellogg, to secure the payment of $1,346.76, payable one year from date; and then introduced a sheriff's deed bearing date December 31, 1859, in which deed Francis B. Webster, of Girard, Erie county, Pennsylvania, was grantee, showing that these lands were sold by the sheriff of Winnebago county in pursuance of a judgment of foreclosure rendered in the circuit court of said county. This deed recites an action between one Francis B. Webster as plaintiff, and Follette and wife and several others as defendants, and that the mortgage foreclosed in such action bore date on the 7th

day of September, 1857, but it does not further identify such mortgage as the one executed by the said Follette and wife to the said William Kellogg. Several objections were made by the defendant to the introduction of this deed; but, as we have concluded that the judgment in favor of the plaintiff must be reversed upon other grounds, and as it is probable that upon a new trial the plaintiff will be able to avoid many, if not all, the objections made to the introduction of this deed, by further evidence, we do not feel called upon to determine whether such objections were or were not well taken.

"After the introduction of the sheriff's deed to Francis B. Webster, the plaintiff offered in evidence a deed purporting to be made by one James Webster, as executor of the last will and testament of Francis B. Webster, deceased, to the plaintiff. This deed bears date the 11th day of February, 1867, and purports to convey the lands in question to the plaintiff. In connection with said deed, plaintiff also offered in evidence chapter 51 of the Private and Local Laws of this state for the year 1866. To the introduction of this deed, the defendant interposed the following objections: *first*, that there is no authority shown, by the production of the last will and testament of Francis B. Webster, that his executor had power to sell said lands; *second*, that there is no evidence before the court showing that James Webster is the executor of the last will and testament of Francis B. Webster, deceased; *third*, that there is no proof of the probate of the will of Francis B. Webster; *fourth*, that there is no proof of any authority in James Webster to act as the executor of said Francis B. Webster; *fifth*, that chapter 51, P. & L. Laws of 1866, is unconstitutional and void. These objections were all overruled, and the defendant excepted."

For the plaintiff, there was a brief by *Tracy & Bailey*, and oral argument by *Mr. Tracy*.

*W. H. Webster*, for the defendant.

TAYLOR, J.  It is evident that the legislature intended, by the passage of sections 4165 and 4166, to make certificates like those introduced by the plaintiff in this case evidence of a legal title.  Section 4165 made the receiver's receipt or certificate of purchase, and the official certificate of any register or receiver of the entry or purchase of any land, or the location of any land by any land warrant, presumptive evidence that the title to the lands described in such certificate or receipt vested in the person named therein.  Section 4166 provides that the register's certificate that, from the books and records of the United States land office, it appears that on a certain date some person, naming him, entered, purchased and paid for a certain tract of land described in such certificate, shall be received as presumptive evidence of the facts therein stated.  The former section made the certificate of the receiver or register evidence of title, and this section makes the certificate therein prescribed evidence that the books and records in the land office show that the person therein named purchased, entered and paid for the land therein described.  This last certificate is higher evidence of the fact that the land was entered and paid for by the person described therein, than the certificate prescribed by the former statute.  And although section 4166 does not declare that such certificate shall be presumptive evidence of title in the person described therein as the purchaser, still this court will take notice of the fact that, under the laws of the United States, every person who has entered, purchased and paid for a tract of land at the United States land office, is entitled to a patent for the lands so entered, purchased and paid for, unless such entry be set aside for cause shown; and we must presume, therefore, that after the lapse of more than twenty years after such entry and purchase, such patent has issued to the purchaser as the law requires.  The court properly overruled the objection to this evidence.

It will be seen that the plaintiff relied entirely upon chap-

ter 51, P. &. L. Laws of 1866, for the authority of James Webster to make the deed to him, and gave no other evidence of his right to make such deed, and convey the lands of Francis B. Webster, deceased, except that derived from this statute.    There was no proof, unless the statute furnished such proof, that Francis B. Webster ever made a last will and testament, nor that James Webster was his executor.    The act is entitled "An act to authorize the executor of the last will and testament of Francis B. Webster, deceased, to sell real estate." Section 1 of the act, which confers the power to sell, reads as follows:   "Section 1.    James Webster of Girard, Erie county, Pennsylvania, executor of the last will and testament of Francis B. Webster, deceased, is hereby authorized and empowered to sell and dispose of all real estate, of every nature and kind, situate in the state of Wisconsin, of which said Francis B. Webster died seized, and to sell and dispose of any interest which said Francis B. Webster had at the time of his decease, or the estate of said Francis B. Webster now has, in any real estate situate in the state of Wisconsin, and upon such sale or sales to execute and deliver all necessary instruments of conveyance or transfer, and all necessary deeds, in the usual form, with or without the usual covenants of warranty."

There are no recitals in the act showing any reason for conferring the power of sale on the executor — that the parties interested consented to the grant of such power or were under any disability of any kind; nor was any reason for the sale shown upon the trial.    Upon this state of facts we have come to the conclusion that the act is unconstitutional and void.    It may be conceded that previous to the amendment of our constitution, adopted November, 1871, which, in express terms, forbids the passage of any special or private law "authorizing the sale or mortgage of real or personal property of minors or others under disability," the legislature of this state might have constitutionally passed special acts authorizing guardians of minors or insane persons,

or others under disability, to sell the property of their wards; but from the concession of this power to the legislature it does not by any means follow that it may, by special act and without consent, authorize A. to sell and convey the lands of B., he being at the time under no disability, and no consent to or necessity for such authorized sale being shown. An attempt on the part of the legislature to transfer the property of A. to B. without A.'s consent, either with or without compensation, is a violation of the spirit if not the letter of the constitution of this state, which provides that "the property of no person shall be taken for public use without just compensation therefor" (article I, sec. 13, Const. of Wisconsin; *Newcomb v. Smith*, 2 Pin., 133); and if this act had been passed since July 28, 1868, it would have been a clear violation of the fourteenth amendment of the constitution of the United States, which provides, among other things, "that no state shall deprive any person of life, liberty or property, without due process of law." *Rowan v. State*, 30 Wis., 129, 146.

It is quite clear, within all the decisions upon that question, that the mere fiat of the legislature transferring the property of A. to B. is not due process of law within the meaning of that provision of the constitution of the United States. The act in question, standing alone and unexplained, is nothing more nor less than an arbitrary attempt on the part of the legislature to authorize an individual, who does not appear to have any estate or right to the real estate in question, either as trustee or otherwise, to sell and convey the title to the same to such persons; and for such price, as he may deem expedient; nor does it attempt to provide that he shall turn over the proceeds of the sales to the persons holding the title of the lands sold. The fact that the act of the legislature calls him the executor of the last will and testament of Francis B. Webster, deceased, does not change the nature of the act. His being executor of the will of a deceased person does not

prove that he had any interest or estate in the real property of the deceased, or any power to sell the same.

The exact question presented in this case was before the court of appeals of the state of New York in the case of *Powers v. Bergen*, 6 N. Y., 358, and, after a full discussion of the case, an act similar in most respects to the one here in question was held void. In the opinion in that case the court say:

"Here the sovereign and absolute power resides in the people, and the legislature can only exercise such powers as have been delegated to it. The right of eminent domain, or inherent sovereign power, gives the legislature the control of private property for public uses, and only for such uses. In such cases the interest of the public is deemed paramount to that of any private individual. And yet even here the constitution of the United States (article 5 of the amendments) and the constitution of this state (article 1, sec. 6), have imposed a salutary check upon the exercise of legislative power for that purpose, by providing that private property shall not be taken for public use without just compensation.

"It follows that if the legislature should pass an act to take private property for a purpose not of a public nature, as if it should provide, through certain forms to be observed, to take the property of one and give it (or sell it, which is the same thing in principle) to another, or if it should vacate a grant of property under the pretext of some public use, such cases would be gross abuses of the discretion of the legislature, and fraudulent attacks on private rights, and the law would clearly be unconstitutional and void. 2 Kent's Com., 340. If the power exists to take the property of one without his consent and transfer it to another, it may as well be exercised without making compensation as with it; for there is no provision in the constitution that just compensation shall be made to the owner when his property shall be taken for *private* use. The power of making contracts for the sale and disposition of

private property for individual owners has not been delegated to the legislature, or to others through or by any agency conferred on them for such purpose by the legislature; and if the title of A. to property can, without his fault or consent, be transferred to B., it may as well be effected without as with a consideration.   In *Wilkinson v. Leland* (2 Peters, 657), the late Judge Story says: 'The fundamental maxims of a free government seem to require that the rights of personal liberty and private property should be held sacred.   At least, no court of justice in this country would be warranted in assuming that the power to violate and disregard them — a power so repugnant to the common principles of justice and civil liberty — lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people.   The people ought not to be presumed to part with rights so vital to their security and well being, without very strong and direct expressions of such an intention.'   He added: 'We know of no case in which a legislative act to transfer the property of A. to B. without his consent has ever been held a constitutional exercise of legislative power in any state in the Union.   On the contrary, it has been constantly resisted as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced.' "

In *Taylor v. Porter*, 4 Hill, 143, Justice Bronson says: "The power of making bargains for individuals has not been delegated to any branch of the government, and if the title of A. can without his fault be transferred to B., it may as well be done without as with compensation."   In the matter of *Albany Street*, 11 Wend., 149, Chief Justice Savage says: "The constitution, by authorizing the appropriation of private property for public use, impliedly declares that for any other use private property shall not be taken from one and applied to the private use of another."   Mr. Senator Tracy, in the same case, said: "The words should be construed as equivalent to a constitutional declaration that private property, with-

out the consent of the owner, shall be taken only for public use, and then only upon a just compensation." This court, in the cases of *Newell v. Smith*, 15 Wis., 101, *Osborn v. Hart*, 24 Wis., 89, and *Newcomb v. Smith*, *supra*, evidently held to the doctrine announced by the courts of New York above referred to.

We fully concur in the conclusions arrived at by the court of appeals in New York in the case of *Powers v. Bergen;* and, without attempting any elaborate discussion of the question, we hold that the legislature has no power, arbitrarily and without the consent of an individual who is under no disability, to transfer his title to real estate to another, or to authorize some other person, not appointed by him, to make such transfer, and that the act in question, which attempted to effect such purpose, is void, and consequently no title passed to the grantee in the deed of the executor offered in evidence.

The counsel for the appellant and plaintiff attempted to supply the defect of title by introducing certain deeds purporting to be made by the heirs and residuary legatees of the deceased, Francis B. Webster. If the evidence in the case had shown that the parties to these deeds took the title to the lands of the deceased under his will, we would have no difficulty in holding that the grantee of the executor took the title from the date of his deed. The executor having undertaken to grant the lands of his deceased on behalf of those interested, a deed from them confirming such sale would take effect as of the date of the original deed, except as to persons claiming under such parties by deed subsequent to the sale by the executor and before the deed of confirmation. The deed of confirmation would be a ratification of the act of the executor, treating him as the agent of the parties interested, and would make his act good from its date, except as above stated. *Ladd v. Hildebrant*, 27 Wis., 135. But as the evidence does not show that the title of the real estate in question vested in the grantors named in the deeds of confirmation, the court cannot

find that the title passed to the grantee of the executor. Had the will been introduced in evidence, it would then have appeared who were the holders of the legal title, and a good deed of confirmation from such parties would have made the plaintiff's title perfect. As the evidence does not show these facts, and as the executor's deed to the plaintiff is void, he has failed to show any title in himself to the lands described in the complaint, and the court should have directed a verdict for the defendant as to all the lands demanded.

*By the Court.* — So much of the judgment of the circuit court as is appealed from by *S. A. Coleman*, is reversed, and the cause is remanded for a new trial. And so much of the judgment of the circuit court as is appealed from by *William C. Culbertson*, is affirmed.