Mohr vs. Porter and another.

CASSODAY, J., took no part.

MOHR vs. PORTER and another.

*March 3 — March 24, 1881.*

GUARDIAN'S SALE. *(1) Sufficiency of guardian's petition. (2) Jurisdiction of court, upon such petition, as against guardian and ward. (3) Statutory rule as to validity of sale.*

1. The decision in *Mohr v. Tulip*, 40 Wis., 66, that the petition filed in the probate court by the former guardian of the plaintiff for leave to sell real property of his ward for his support, etc., was sufficient to call into exercise the powers of that court upon that subject — followed.

Mohr vs. Porter and another.

2. In a statutory proceeding by the guardian of an insane person for the sale of real estate of his ward, he represents the ward; and where a proper petition has been presented by the guardian to the proper county court, that court has jurisdiction to order such a sale, and its determination would be binding upon the guardian and the ward, even though it were not binding upon other parties, having adversary interests, without due notice to them. *Mohr v. Tulip*, so far as it holds a contrary view, overruled.

3. Section 62, ch. 94, R. S. 1858, declared that such a sale should not be avoided on account of any irregularity in the proceedings provided certain facts there specified should appear; and these included the granting of a license to the executor, administrator or guardian, but did not include notice to the parties interested adversely to the petition, although such notice was elsewhere prescribed in the statute. *Held*,

    (1) That the section is valid.

    (2) That "the county court having jurisdiction," in subd. 1 of said section, means merely the county court having jurisdiction of *the estate*.

    (3) That as it appears that all the other facts required by that section to give validity to the sale here in question, existed, and as there was evidence tending to show that defendant was a *purchaser in good faith* (subd. 5), the court below erred in refusing to submit that question to the jury.

    COLE, C. J., dissents.

APPEAL from the Circuit Court for *Rock* County.

Defendants appealed from a judgment rendered against them in ejectment. The case will sufficiently appear from the opinion, and from the report in *Mohr v. Tulip*, 40 Wis., 66.

For the appellants there were briefs by *H. S. Winsor*, their attorney, with *S. U. Pinney*, of counsel, and oral argument by *Mr. Pinney*.

For the respondent there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen*.

TAYLOR, J. This is an action of ejectment, brought to recover a certain tract of land which had been sold by the guardian of the plaintiff during his alleged insanity. After the sale, the plaintiff was declared sane by the proper court, his guardian was discharged, and rendered to the proper court an account of his guardianship, in which he accounted for the

money received on the sale.    This court decided in the case of
*Mohr v. Tulip*, 40 Wis., 66, which was an action brought by
the respondent to recover of Tulip another part of the lands
sold by said guardian at the same sale and under the same
proceedings to a different purchaser, that the petition filed by
the guardian in the probate court was sufficient in substance
to call into exercise the powers of that court; or, in other
words, that by the filing of the petition the court acquired
jurisdiction of the subject matter of the proceeding; that the
petition, although somewhat imperfect, was not so defective as
to be void.    It must be held, therefore, in this court that the
proceedings offered in evidence by the defendants to show a
sale by the guardian of the plaintiff were sufficient to give the
probate court jurisdiction to proceed in the matter.    But it
was also held in that case, that the proceedings were void be-
cause the notice required by statute to be given to the parties
interested was not given the requisite length of time before the
hearing of the petition, and consequently the court did not
obtain jurisdiction to make the order for sale or to proceed
further in the matter.    It was said that the case was governed
by the rules of law which govern the sale of lands by execu-
tors and administrators to pay the debts of the deceased, and
that this court had repeatedly held that in such cases it is
absolutely essential that the statutory notice for the hearing
should be given, otherwise the whole proceedings are void. ·

The case of *Mohr v. Manierre*, 101 U. S., 417, was also an
action brought by this respondent to recover another parcel of
land sold by the same guardian at the same sale and under the
same proceedings.    That case was tried in the circuit court of
the United States, and certified to the supreme court of the
United States upon a difference of opinion of the judges pre-
siding at the circuit.    That court held the sale valid, and that
the want of statutory notice did not render the same void.
These differing opinions of the state and United States courts
leave the parties purchasing at that guardian's sale in the

anomalous position that, if the purchaser or his grantee happens to be a resident of some state other than the state of Wisconsin, he has a good title to the land purchased, because in that case his rights are determined by the supreme court of the United States; but if the purchaser is a resident of this state, and his rights must be determined by the decision of the supreme court of this state, he has no title. This conflict of opinion between this court and the supreme court of the United States, which has led to this peculiar result, which makes the title to real eatate situated in this state depend upon the residence of the party in possession, has induced us to reconsider the question at issue between the two courts, with a view of determining, if we can, which of the two courts is right; and, if it be found that this court has mistaken the law governing the case, then to recede from the opinion in *Mohr v. Tulip*, and agree with the supreme court of the United States in *Mohr v. Manierre.*

In the case of *Mohr v. Manierre*, the supreme court of the United States, after citing the sections of our statute requiring notice of the hearing of the application of the guardian for a license to sell to be given, says: " It is apparent from these sections that the publication of notice of the hearing is only intended for the protection of parties having adversary interests in the property, and is not essential to the jurisdiction of the courts. It may be dispensed with if the parties having such interests consent to the sale. The consent could not be given by the lunatic, for he, by his condition, would be incapable of giving consent, and yet upon the others' consent the court could proceed to act without notice to him. Nor, indeed, was there any reason why publication of notice should be made for other parties than those who held adversary interests. The lunatic could not be affected by such publication any more than by his consent. The application of the guardian to the county court was required by the law only as a check against any improvident action by him. *There was*

*nothing in the nature of the proceedings which required a notice of any kind, so far as the rights of the lunatic are concerned.* The law would have been free from objection had it simply authorized, upon the consent of the court, a sale of the lunatic's property for the payment of his debts." Then, after discussing the doctrine of that court as announced in the case of *Grignon's Lessee v. Astor*, and approving of the decision in that case, it finally disposes of the case upon another ground, which is thus briefly stated: "In *Mohr v. Tulip*, the supreme court of Wisconsin overlooked the distinction between the position of the lunatic, who was in fact the applicant through his representative, and that of parties having an adversary interest in the property. He can no more object to the sale of his property for want of notice to them, if the provisions of law intended for his protection were followed, than a plaintiff in a personal action could object to a sale upon his own judgment on the ground that the latter was prematurely entered. The object of notice or citation in all legal proceedings is to afford to parties having separate or adverse interests an opportunity to be heard; it is not for the protection of the applicant or suitor. The statute declares that upon the existence of certain facts the sale of the lunatic's estate may be made; and when these appeared in the petition of the guardian, the court had jurisdiction to act, so far as his rights were concerned, as fully so as if the statute had so declared in terms, whatever may be the effect of its proceedings upon the interest of parties not properly before the court. We see no reason, therefore, so far as his interests are affected, to depart from the doctrine of *Grignon's Lessee v. Astor*."

This court agrees with the supreme court of the United States that the object of the notice is to bring before the court parties interested in the proceedings, and expressly holds that the notice is in the nature of process to give the court jurisdiction of the persons of the parties interested. In *Mohr v. Tulip* the court say that "the required notice was not given of

the hearing of the application for a license. Such notice was in the nature of process to bring the proper parties before the court, and was essential to confer jurisdiction over the proceedings upon the county court. This is plainly the result of the decisions of this court, so far as it has had occasion to consider the effect of not giving such notice in these proceedings, or to pass upon the analogous questions relating to the jurisdiction of probate courts in these matters." This court then cites the cases of *Sitzman v. Pacquette*, 13 Wis., 292; *Gibbs v. Shaw*, 17 Wis., 197; *Blodgett v. Hitt*, 29 Wis., 176; *Chase v. Ross*, 36 Wis., 267; *McCrubb v. Bray*, 36 Wis., 333; *Reynolds v. Schmidt*, 20 Wis., 374. After citing the several sections of the statute governing the proceedings in cases of this kind, the court further says: "The question then arises, Was not this failure to give the statutory notice a fatal defect in the proceeding? Upon the rule laid down in the above decisions, this question must receive an affirmative answer. There is no possible escape from this conclusion, unless the position of the learned counsel for the defendant is correct, namely, that the court had previously acquired jurisdiction of the *res* under a sufficient petition, and the failure to give that notice did not oust the jurisdiction. But obviously this view cannot be adopted without departing from the rule laid down by this court on the subject; for it has been held, whenever the question has arisen, that, to confer jurisdiction over the proceeding, notice according to the requirements of the statute must be given to the persons interested in the estate, otherwise a sale cannot be sustained even in a collateral action."

The reason given why the want of notice renders the proceeding void, in the cases in New York which are cited with approval by this court *(Corwin v. Merritt*, 3 Barb., 341; *Bloom v. Burdick*, 1 Hill, 130; and *Schneider v. McFarland*, 2 N. Y., 459)*, is that such notice "is in the nature of first process to summon the parties, and is indispensable to enable the court to get jurisdiction of the persons of the parties interested

in the proceedings." This, it seems, is the true ground to place it on, and the only one consistent with holding the want of notice fatal to the proceedings. The law which authorizes the probate court to license an executor or administrator to sell real estate for the payment of the debts of the deceased, treats the heirs-at-law, and, in case of a will, the devisees, as having an interest adverse to the administrator or executor in such proceedings, and requires notice to be given to such parties having adverse interests, before any authority shall be granted. As to them it is treated by the law regulating the proceedings as a personal action, and the court does not, therefore, obtain jurisdiction of the persons of such parties unless they are served with notice as required by law. In this view of the case, we think the decisions of this court in relation to sales of real estate made by executors or administrators are consistent with the law, unless section 62, ch. 94, avoids the difficulty; and, so far as there is any conflict between the decisions of this court and the case of *Grignon's Lessee v. Astor*, we should adhere to our own decisions. The cases in this court holding, as in New York, that the notice is not to give the court jurisdiction of the subject matter, but of the persons of the parties having adverse rights to be passed upon, and that the presenting of a sufficient petition by the executor, administrator or guardian gives the court jurisdiction of the subject matter, it would seem to follow that all who had notice, or who appeared in the proceedings, or consented thereto, would be bound thereby, although some other parties interested, who had no notice, would not be so bound. We think this must be so under the statute. Section 4 of chapter 94 provides for publishing the notice of hearing, and serving it on all persons resident in the county; but it also provides that this notice need not be published if all persons interested in the sale shall signify in writing their assent thereto. Now, under that section, we think all parties who should signify their assent to the sale would be estopped from setting aside

the sale because others were not notified according to law. Having notice, or having consented to the sale, the court would have jurisdiction of their persons, and they would be bound as in any other action.

This court has, since the decision of the case of *Mohr v. Tulip*, decided that probate proceedings, like other legal proceedings, bind those who have notice, or appear or consent to the same, although there may be others who were proper parties who had no notice, and who did not appear nor consent thereto, and who were not bound by such proceedings. *O'Dell v. Rogers*, 44 Wis., 136, 172. Justice ORTON, in his opinion in that case, says: " And even in such cases it is held that the petition and proof of the facts confer jurisdiction of the subject matter. . . . Jurisdiction of the parties or persons interested, and due notice to them, are also unquestionably necessary to make the sale valid as to them; and such proceeding is in the nature of a suit, and the defendants must have notice as in other cases of suits at law or in equity, and the want of notice would be attended with the same consequences;" citing *Gibbs v. Shaw,* and *Blodgett v. Hitt, supra,* amongst other cases. He then says: " These cases do not conflict with the principle that want of notice only makes such proceedings void as to the persons not appearing or assenting, and that such notice may be waived." To the same effect are the following cases: *Kimball v. Fisk*, 39 N. H., 110; *State v. Richmond*, 26 N. H., 241; Schouler's Domestic Relations, 485, and cases cited in note 2. We are inclined to think that this view of the case was, as intimated by the supreme court of the United States, overlooked in the decision of *Mohr v. Tulip*, or, if not overlooked, not sufficiently considered. By looking at the briefs of counsel in that case, it is not made very clear that the point was raised in the form it took in the case of *Mohr v. Manierre*. The relation of the ward to his guardian was commented on briefly in considering the question as to whether the proceeding should be considered an ad-

versary proceeding or a proceeding *in rem*, but the question, as to whom the proceedings were adversary, was not fully discussed in the briefs of counsel, and nothing is said upon that question in the opinion of the court.

If this be the rule, then the question arises in this case, as it did in the case of *Mohr v. Tulip*, whether *Mohr* was represented by his guardian in the proceedings in question, so that, being so represented, he cannot avoid the same, as was held by the supreme court of the United States in *Mohr v. Manierre, supra.* The following provisions of our statute have some bearing upon that question: Section 5, ch. 94, provides that when the administrator proceeds to sell, and there are minor heirs, the general guardians of such minor heirs shall represent them in such proceedings, and all notices required to be served shall be served on such general guardians. Section 51 provides that " no license shall be granted to any guardian to sell real estate of his ward, as provided in this chapter, in any case excepting that of minors, unless the supervisors of the town of which the ward is an inhabitant, or in which he resides, shall certify to the judge of the county court, in writing, their approbation of such proposed sale, and that they deem it necessary." Section 52 provides that " all those who are next of kin and heirs apparent or presumptive of a ward, shall be considered as interested in the estate, and may appear as such and answer to the petition of the guardian; and when personal notice of the time and place of hearing the petition is required to be given, they shall be notified as persons interested, according to the provisions respecting similar sales by executors and administrators, contained in this chapter." Section 6 provides, amongst other things, that upon the hearing the court " shall hear and examine the allegations and proofs of the petitioner, and of all persons interested in the estate who shall think proper to oppose the application." Section 8 provides that " the heir or devisee of the real estate in question, and any person claiming under them, may contest the validity of the debts," etc.

It seems to us that section 52, above quoted, does not contemplate that the person under guardianship needs any notice of the proceedings, as it provides that certain parties (naming them) shall be considered interested, and that they may appear and answer the petition, and must have personal notice of the time and place of hearing, as prescribed in the case of sales by executors and administrators.

The legislature has protected the ward in cases like the present by requiring that no sale of his real estate shall be ordered without the certificate of the principal officers of the town in which he resides, approving such sale and declaring that they deem it necessary, and then not permitting it to be ordered except upon the petition of the guardian of the ward, showing its necessity. There can be no reason for holding that, in addition to this, such ward should have notice of the proceeding by publication, and also by personal service of such notice if he lives in the county in which the application is made. To test the question further under this statute, suppose all the next of kin and heirs, apparent and presumptive, of this insane person had appeared and signified in writing their assent to the sale: would it not have done away with the necessity of further notice of such proceeding, or would it still have been necessary to have procured the written consent of the insane person, or to have published and served personally a notice upon the insane ward? Either one or the other of these things must be done, if the ward is entitled to notice under the provisions of section 4 of said chapter. When all other persons having any interest in the proceeding have consented to the same, why go through the form of serving a notice on an insane man, or publishing a notice for his benefit? Such a proceeding would be absurd and worse than useless, and we cannot believe the legislature intended any such absurdity. If it be argued that the notice must be served on the next of kin or heirs apparent of the insane ward, not only for their protection, but for the protection of the ward himself, and that the want of such service is therefore detri-

mental to the interest of the ward, as well as to the interests of the next of kin, etc., and therefore the proceedings should be held void, we answer that the statute does not appear to require notice to the next of kin or heirs apparent for the protection of the interest of the ward, but for the protection of any prospective interests they may have in his estate. We think the legislature have protected the interest of the ward in such proceeding, through the guardian, the court, and the principal officers of the town in which he resides, and that the requisition to give notice to the next of kin, etc., is for the protection of their supposed interests, and for that alone.

If, as is said by the supreme court of the United States in *Mohr v. Manierre*, the guardian represents the ward and his interests, then it would be contrary to all well-established rules of law to hold that he could set aside the sale for a neglect to give notice to other parties. If the ward can set aside the sale for such irregularity, and the insanity had continued, there does not seem to be any good reason why the guardian might not himself set it aside and redeem the lands from the purchasers for the use of his ward. He ought to have a right to enforce any claim his ward had to his estate after the sale, to the same extent that the ward ought to be allowed to enforce it. It cannot, we think, be denied that under the laws of this state the proceedings of a guardian to sell the estate of his ward to pay debts or otherwise is adversary as to those parties who, the statute has declared, shall be deemed interested in the estate, who are authorized to appear and answer the petition, and to have notice of the proceedings; but whether such proceedings are adverse to the ward himself, who is proceeding by his guardian to procure the sale, and whether such ward is entitled to any other notice of the proceedings than such as he gets through his guardian, is quite another question, which does not seem to have been considered in the case of *Mohr v. Tulip*.

That in these proceedings the guardian represents his ward

and acts for him, is sustained very generally by the authorities we have been able to find bearing upon the subject in other courts; and we find no decision of this court which holds the contrary, unless it be the one of *Mohr v. Tulip*. For these reasons, we think, the case of *Mohr v. Tulip*, so far as it holds the sale in this case void as against the ward himself, must be overruled.

There is another reason why I think that case ought not to be followed. Section 62, ch. 94, R. S., 1858, expressly provides, amongst other things, that an executor's, administrator's or guardian's sale shall not be avoided on account of any irregularity in the proceedings, provided it shall appear, (1) that the executor, administrator or guardian was licensed to make the sale by the county court having jurisdiction; (2) that he gave a bond which was approved by the *judge of the county* court, in case a bond was required, upon granting a license; (3) that he took the oath prescribed in this chapter; (4) that he gave notice of the time and place of sale as in this chapter prescribed; (5) that the premises were sold accordingly, and the sale confirmed by the court, and that they are held by one who purchased them in good faith.

The record in this case shows that all these things were done by the guardian in this case. The only question upon which there might have been some dispute in the evidence was, whether the premises were held by one who purchased them in good faith. This question the circuit court refused to submit to the jury, and directed a verdict for the *plaintiff, following* the decision of this court in the case of *Mohr v. Tulip*. The provisions of this section were considered in *Reynolds v. Schmidt*, 20 Wis., 374, and *Chase v. Ross*, 36 Wis., 267, and *McCrubb v. Bray*, id., 333. In *Reynolds v. Schmidt*, the chief justice, who delivered the opinion, says: "The words 'the probate court having jurisdiction' obviously mean the probate court of the county where the deceased resided at the time of his death, and which had jurisdiction of the estate.

To give the statute any other construction, it seems to us, would be to nullify its provisions." It was argued in that case that the words meant not only the court of the county where the deceased resided at the time of his death, and within whose jurisdiction the land sold was situated, " but that the state of facts was such as to give the probate court jurisdiction in the particular case." This claim was repudiated by the court in the following language: " This is giving the statute a construction quite too narrow and restricted. It is in effect saying that if there be any defect in the matters set forth in the petition, any irregularity in the proceedings before granting the license, this should render the sale invalid."

In *McCrubb v. Bray* it was held that if any one of the conditions mentioned in this section was wanting, or did not appear by direct proof or legal inference, the sale was void; and in *Chase v. Ross* it was held that a sale made or claimed to be made under this chapter by an administrator who was not in fact an administrator of the estate of the deceased, was void, and such sale was not cured by the section above quoted. Justice LYON, who wrote the opinion in this case, after quoting the cases of *Sitzman v. Pacquette* and *Frederick v. Pacquette*, remarks that *Sitzman v. Pacquette* was ruled by the Revised Statutes of 1839, which do not contain the provisions found in the revision of 1849, re-enacted in the revision of 1858 as section 62, ch. 94. He might have also added that the cases of *Gibbs v. Shaw* and *Blodgett v. Hitt* were also ruled by the statutes of 1839, as the sales in both those cases took place before the first enactment of the section quoted in the Revised Statutes of 1849. After quoting section 62, ch. 94, Justice LYON says: " The effect of this section is, that if any of the conditions therein mentioned are wanting, or do not appear either by direct proof or legal inference, the sale is invalid. Hence, in the present case, if the county court had no jurisdiction to grant license to sell the land in controversy, the sale is void. If the court had no power to appoint an admin-

istrator *de bonis non*, or to grant letters of administration with the will annexed, it seems too clear for argument that it could not grant a valid license of sale. Before a step can be taken towards granting such license, there must be a lawful executor or administrator. Commenting upon the first subdivision of the section above quoted, in *Reynolds v. Schmidt*, 20 Wis., 374, Mr. Justice COLE says: 'By the probate court having jurisdiction is obviously meant the probate court of the county in which the deceased resided at the time of his death, and which had jurisdiction of the estate.' In no correct sense can it be said that the court has jurisdiction of the estate before proper proceedings are instituted therein to prove the will (if there be one), or to appoint an administrator." The court concluded and held that the probate court had not jurisdiction of the matter, and that the sale in that case was void, because the record showed that the person making the application and sale was not an administrator.

These are the only cases in this court in which any construction has been expressly given to this section. In the case of *Mohr v. Tulip* this section is not referred to as having any bearing upon the case. The cases above cited have, I think, settled two things: (1) That the court having jurisdiction of the case, within the meaning of said section, is "the probate court of the county in which the deceased resided at the time of his death (or, I think, in case the deceased was a non-resident of the state at the time of his death, the county in which he left assets in this state), and which had jurisdiction of the estate;" and (2) that if any of the conditions are wanting which are mentioned in said section, the sale will be void. Again, the court, to have jurisdiction of the estate within the meaning of such section, must have appointed an executor or administrator of such estate. To my mind it is very clear that no other exceptions should be made, and where it appears that an administrator or guardian has been appointed by the court having jurisdiction of the estate of the deceased or ward,

and that a sale of real estate has been made by such adminis-
trator or guardian, and it further appears that a license was
made by such court authorizing such sale, that the bond was
given and approved, the oath taken, notice of sale given, and
sale made in pursuance thereof, and confirmed to one who
purchased in good faith, the sale should not be avoided in a
collateral action.

If this construction be not given to it, then it must receive
the other construction, which was repudiated in *Reynolds v.
Schmidt*; and the omission of any matter or thing which the
statute has directed to be done, and which has not been done,
will avoid the sale notwithstanding this section, which was evi-
dently inserted in the statutes to cure irregularities and defects
in the proceedings. The states of Michigan and Massachu-
setts have the same provision in their statutes, from which
ours was probably taken and is in the exact language. See R.
S. Mich. 1846, ch. 78, § 62; R. S. Mass. 1860, ch. 102, § 47.
This statute was construed by the supreme court of Michigan
in the cases of *Howard v. Moore*, 2 Mich., 227; *Coon v. Fry*,
6 Mich., 506; and *Marvin v. Schilling*, 12 Mich., 356; and in
Massachusetts in *Cooper v. Robinson*, 2 Cush., 184. In the
case of *Howard v. Moore, supra*, the supreme court of Michi-
gan say that this curative provision was taken from the laws
of Massachusetts, and that it was enacted for the purpose of
superseding the decisions in that state and in the state of New
York, which held that all proceedings in courts of probate
were void unless the statute was conformed to in every essen-
tial particular. That this was the purpose of the act is patent
on its face. The statute has gone on and prescribed with par-
ticularity what shall be done by an executor, administrator or
guardian in order to sell the real estate of the deceased or ward
to pay debts, and then closes up with this section, which says,
in effect, that although the proceedings as prescribed in this
chapter have not been followed, yet, if there has been a sale to a
*bona fide* purchaser, and certain things appear to have been

done, the sale shall not be avoided in any collateral action. The object of this section was to protect *bona fide* purchasers, and to affirm their titles, notwithstanding the proceedings may have been irregular in many respects.

But it is said that because this court has held that notice to the parties interested must be given, or the court does not acquire jurisdiction of the persons entitled to have notice, therefore the notice is a matter relating to the jurisdiction of the court, and that it is not cured by the section referred to. I do not understand that the notice to the heirs-at-law, or other parties interested, is absolutely necessary to give jurisdiction to the probate court; and this court has not so decided. It has decided that because the statute has required notice to be given, it must be given or there is no jurisdiction to determine the rights of those entitled to such notice under *the* statute. It would follow, as a matter of course, if there were any constitutional or other objection to conferring power upon the probate court to order the sale of lands of a deceased person or ward for the payment of debts, or for the other purposes mentioned in the statute, without first giving notice to those supposed to have an interest in the matter, then the section above quoted could not cure such defect; not because it was not intended to cure it, but because the legislature had no power to cure it. If, on the other hand, the legislature, if it saw fit, could confer upon the probate courts the power to sell the lands of wards or intestates to pay debts, or for other purposes mentioned therein, without giving *notice to those interested,* then it would have the power to declare that the failure to give a notice which it had directed should not render the sale void, and that the giving such notice should be considered directory only, and the want of it not fatal to the proceedings. That the legislature has the power to give probate courts the right to authorize the sale of real estate of deceased persons, or of wards under guardianship, to pay debts, or for their support, or to make the estate more profitable by changing it from

real to personal estate, without giving any notice to the heirs-at-law or devisees of a deceased person, or to those supposed to be interested in the estate of a ward, is well established by the authorities.

This question is discussed by Mr. Cooley in his work on Constitutional Limitations, and he cites a great many cases showing that the legislature may, by an act of legislation, authorize the sale of · the estates of deceased persons to pay debts, and of wards to pay debts, or for their better support, without the action of any court upon the subject, and without any notice given to parties interested that any application to the legislature for such authorization will be made.  The courts have held uniformly that such legislation is not an assumption of judicial functions.  It goes no further than changing the property from real to personal, without directing how the property shall be applied after it is so converted.  Such legislation does not adjudicate that any debts are due and owing which should be paid out of the converted property when the sale is ordered to pay debts.  It proceeds upon the assumption that there are debts owing which should be paid from the proceeds of the sale, but leaves the adjustment and payment of the same to the executor, administrator or guardian; and, where there are any disputes as to the amount due, such disputes are settled by the courts.  If the legislature should authorize an executor, administrator or guardian to sell real estate to pay debts, and it should turn out that there were no debts which ought to be paid out of the estate, such act of the legislature might be held void.  But the fact appearing that there were debts to pay, the act will be upheld.  If the legislature can by an act authorize such trustees to sell the trust estate, it would seem to follow as a matter of course that they could authorize the probate court to grant such power of sale upon the application of the trustee, without notice to persons interested; and in some of the states such power is given and may be exercised without notice to any one.  For the dis-

cussion of this matter, see Cooley on Constitutional Limitations, pp. 98–106, and the cases cited on pages 102, 103. A few of those in which this question is most ably discussed are the following: *Wilkinson v. Leland*, 2 Pet., 660; *Watkins v. Holman's Lessee*, 16 Pet., 25–60; *Carroll v. Lessee of Olmsted*, 16 Ohio, 251; *Cochran v. Van Surlay*, 20 Wend., 373; *Rice v. Parkman*, 16 Mass., 326; *Ervine's Appeal*, 16 Pa. St., 256; *Estep v. Hutchman*, 14 Serg. & Rawle, 435. The power to pass acts directing the sale of the estates of wards has been often assumed by the legislature of this state. Such power has never been questioned, and the amendment of the constitution in 1871, which, amongst other things, provides that thereafter the legislature shall be prohibited from enacting any special or private law authorizing the sale or mortgage of real or personal property of minors or others under disability, is an implied admission that the legislature had the power to pass such acts before that time. The only case I find in this court where the question arises of the power of the legislature to pass an act authorizing the sale of the real estate of a deceased person or of a ward, is *Culbertson v. Coleman*, 47 Wis., 193; and in that case an act authorizing a person described in the act as an executor to sell all lands owned by the deceased in this state was held void, because no reason for making the sale was set out in the act or proved on the trial, and because there was no evidence on the trial that the person described in the act was the executor of any estate, or that any of the persons interested in such estate were either minors or under any other disability.

That the legislature could authorize the sale of the lands of minors or insane persons to pay debts, or for their support, without notice to any one, is perfectly clear from the nature of the case. In the absence of any statutory provision declaring that certain persons should be considered interested in such proceedings, no one would have any interest in the estates of such wards which would entitle them to any notice of a

proceeding to sell them. And in such cases, the statute having declared that certain persons shall be deemed to have an interest in such proceedings, and be entitled to notice, their right depends entirely on the statute; and as, without it, they would have no right to a notice or hearing on such proceeding, it is therefore perfectly competent for the legislature to say that such proceeding shall not be held void in any collateral proceeding, although such parties had no notice of the proceeding, as required. The rule as to what things directed to be done in legal proceedings may be dispensed with, and not held fatal to the proceeding, is stated by Cooley, in his work above quoted, page 117. He says: "Whatever it may dispense with anterior to the proceedings, we believe it may also dispense with after the proceedings have been taken, if the court has failed to observe any of these formalities." This rule has been frequently stated and acted upon by this court. *Single v. Sup'rs*, 38 Wis., 363; *Mills v. Charleton*, 29 Wis., 400; *Evans v. Sharp*, id., 564; and many other cases which might be cited. If the legislature might, if so disposed, authorize the probate court to grant a license to the guardian of an insane person or minor to sell the estate of such ward for the purpose of paying debts, or for furnishing means of support, or for the more advantageous management of the estate, without giving notice to next of kin, etc., it follows that it might declare that the want of a notice required by statute should not render the proceedings void.

When the purchaser is guilty of no fault and buys in good faith, there is every reason why he should be protected and the ward left to his remedy upon his guardian's bond, if he has been guilty of any misconduct in his guardianship. As the effect of section 62, ch. 94, R. S. 1858, upon the sufficiency of the proceedings to maintain the title of the purchaser in good faith as against the heir or ward, has not been considered except in the two cases referred to, and as in neither of those cases was the question determined whether the want of notice

would avoid the deed notwithstanding such section, we are at liberty to pass upon that question in this case; and, after a careful consideration of the object of that section, I am clearly of the opinion that a want of notice of the hearing of the order is not fatal to the proceedings.

The other objections made to this proceeding do not affect the title of this defendant. He bought no part of the homestead, and, when he purchased, enough of the estate had not been sold to pay the debts of the ward. The notice of sale was, we think, sufficiently definite, and the sale was not therefore void for want of a proper notice of sale. We think that, upon the evidence, the defendant was entitled to a verdict unless it appeared from the evidence that he was not a purchaser in good faith, within the meaning of the section of the statute above referred to; and, as that was a question of fact for the jury, the court erred in refusing to submit that question to them, and in directing a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

Cole, C. J., dissents.

Cassoday J. took no part.