# APPENDIX A.*

---

DARGE VS. HORICON IRON MANUFACTURING COMPANY.

*Award of Arbitrators.*

1. Where a survey and map, describing with fullness and certainty lands flowed by a dam, are annexed to an award of compensation, and referred to therein, the award need not otherwise describe the land.
2. Where the arbitrators were required by law " to make an award of the amount of compensation which shall [should] be paid for damages [for flowing land], and for the perpetual right to flow," the damages for past flowage and value of the future right might be assessed together in one gross sum.
3. Under subd. 3, sec. 1, ch. 4, R. S. 1849, where all the arbitrators appointed in pursuance of defendant's charter met to hear and determine the question submitted, but only a majority signed the award (which purports to be the act of all), it is valid.
4. *It seems* that this would be the fair intendment of the charter, apart from said subd. 3.
5. The award need not show *why* the minority did not sign.

APPEAL from the Circuit Court for *Dodge* County.

The parties to this action, having failed to agree as to the amount to be paid by the defendant company to the plaintiff for the flowage of his lands by its dam, each chose an arbitrator; and these not agreeing, a third arbitrator was appointed pursuant to defendant's charter. An award was made in writing, signed by two of said arbitrators, which, after reciting the appointment of the arbitrators, and that after due notice they met at a specified time and place, proceeds as follows : " Now, therefore, we, the arbitrators before

---

* The two cases published in this Appendix were accidentally omitted from former volumes.

mentioned, having met and been duly sworn as aforesaid, and having heard the proofs and allegations of the parties, and examined the matters in controversy, do make this award in writing, that is to say : The said *Horicon Iron Manufacturing Company* shall pay to the said *Frederick Darge* the sum of $597.25 as the full amount of compensation for damages for flowing the following described land, and for the right to flow the same, to-wit : The lands flowed are a part of N. ¼ of the S. E. ¼ S. E. ¼ of Sec. 9, Town 12, Range 16, and the N. ¼ of the S. W. ¼ of S. W. ¼ of Sec. 10, Town 12, Range 16, and the N. W. ¼ of the S. W. ¼ of the N. W. ¼ of Sec. 10, Town 12 Range 16—amounting to twenty-three and 89–100th acres, according to the survey made by the county surveyor, as per his map marked ' Exhibit A,' and to which reference is hereby made, and which forms part of this award for the purpose of more fully describing said flowed lands, said map being hereto annexed." Defendant moved to set aside the award, for reasons which will sufficiently appear from the opinion ; and appealed from an order denying the motion.

*Gillett & Conklin*, for respondent.

The following opinion was filed at the June term, 1866.

COLE, J. No briefs have been furnished in this case by the counsel for the company, and we are therefore in the dark as to the points and authorities relied on by him to reverse the order of the court below.

The motion to set aside the award was based upon several grounds : First, because it was made and executed by *two* of the arbitrators, instead of *three* as required by law. The arbitration was had under the charter of the company (chap. 133, Priv. Laws of 1854), which provides a method for ascertaining the amount of compensation to be paid by the

company for damages occasioned by reason of overflowing lands belonging to third persons. In case the company could not agree with the owner of lands as to the amount of compensation, provision was made that the company and owner might each select a disinterested arbitrator, and that these arbitrators should select a third, who were to determine the amount the company should pay. Now, although the charter does not, in express words, say that two arbitrators may make the award, yet we think this is the fair intendment of its provisions. But moreover, if there were any doubt as to the proper construction of the charter upon this point, when considered by itself, it is removed by subd. 3, sec. 1, chap. 4, R. S. 1849, which declares that all words purporting to give a joint authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it is otherwise expressly declared in the law giving the authority. It appears that all the arbitrators met to determine the amount of compensation to be paid, while only two signed the award. Under the circumstances, we are disposed to hold this sufficient, and the award valid.

Another objection taken to the award is, that it does not disclose the reason why it was not made and executed by the three arbitrators. We do not think the reason need appear in the award.

A further objection taken to the award is, that it assesses the damages for flowing, and for the perpetual right to flow, the lands of the plaintiff, in a gross sum, instead of assessing the same in two separate sums. We certainly can see no objection to this mode of assessment. The charter says the arbitrators " shall proceed to make an award of the amount of compensation which shall be paid for such damages, and for the perpetual right to flow such lands." Sec. 7. Of course, the whole object of the proceeding is to

ascertain the amount of compensation which the owner of the lands is entitled to receive for his property which has been taken for the public use. And therefore the arbitrators determine the damages sustained up to the time of the assessment, and for the perpetual right to flow. No reason occurs to us why the damages for flowing and for the perpetual right to flow should be assessed in separate sums; and the charter does not seem. to contemplate such a mode of assessment.

Again, it is objected that the award is invalid because it does not describe with sufficient certainty the land flowed, and which the company, upon payment of the damages assessed, would acquire the perpetual right to flow. For a particular description of the lands flowed, the award refers to a survey and map annexed to the award, which was made by the county surveyor. This survey and map describe the lands with fullness and certainty, and, by the reference to them, became a part of the award.

The motion to set aside the award was properly overruled.

*By the Court.*—Order affirmed.

NOTE.—On a motion for a rehearing, *E. G. Ryan,* for the appellant, argued, among other things, that it did not even appear from the award that it was not made without privity of the arbitrator who does not sign it. The award equally states that he signs it as that he had met and heard the subject matter with the others; and it may as well be that he never met, that he was never notified to meet, that he was ignored altogether by the others, as that he did not sign the award. 2. By the common law, a submission to three must be executed by all. There is nothing in the defendant's charter to vary the rule. But its provisions clearly manifest a contrary intention. Where the duty of determining the rights of the parties is concerned, the arbitrators are mentioned as an inseparable body; where the ministerial duty of certifying their proceedings to the court (in case of an appeal) is prescribed, a majority is for the first time mentioned, and empowered to act. 3. Subd. 3, sec. 1, ch. 5, R. S. 1858 (sec. 1, ch. 4, R. S. 1849) does not apply here. On this point counsel contended that it was for the judiciary to determine the meaning of a statute, and that this could not be done by a subsequent act

of the legislature; and that it was doubtful whether this provision was meant to apply to charters of private corporations, or to anything beyond the general body of the public statutory law. 4. The award is at least bad for not disclosing why a majority only make it. If a majority can acquire the jurisdiction conferred on all, it can only be through some refusal or omission of the minority. If all join in the award, the jurisdiction appears from the submission; but if a majority only sign it, their jurisdiction does not thus appear, for it rests not only on the submission but also on a fact *dehors* the submission. 5. The language of the charter separates the damages for past flowing from those for future flowing; and this separation is material to the rights of defendant; since it may elect to lower its dam and cease flowing the land rather than pay for the right to flow in the future.

The motion for a rehearing was denied.—REP.