## ESTATE OF KIRKENDALL: CRAMER'S APPEAL.

ESTATES OF DECEDENTS. *(1–3) Descent of ancestral real estate of intestate. (4) Distribution of intestate personalty. (5) Costs of litigation between claimants to distribution.*

1. Subds. 7 and 8, sec. 1, ch. 92, R. S. (construed in *Perkins v. Simonds*, 28 Wis., 90), have no application to the case of a minor who, not having married, dies intestate, leaving estate inherited from a parent *who left no other issue.*

2. In that provision of sec. 4 of said ch. 92, which declares that "kindred of the half blood shall inherit equally with those of the whole blood in the same degree, *unless* the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance," — the words "unless," etc., do not establish a general rule of inheritance, but merely a particular *exception* to the right of children of the half blood defined in the previous clause; and the person who is next of kin of the full blood of the intestate takes the inheritance, though not of the blood of the ancestor from whom it came to such intestate.

3. Thus, an inheritance which came to the intestate from his mother, would go to his paternal grandmother, rather than to his maternal uncles; degrees of kindred being computed, under the statute, by the rules of the civil law.

4. The exception thus created by sec. 4 as to the descent of ancestral estate is not applicable to the distribution of intestate *personalty* (except heirlooms and the like); and the statutory provision (R. S., ch. 99, sec. 1) which requires personal estate, remaining after administration, to be distributed to the same persons, etc., as prescribed for the descent of realty, must be construed as referring to the *general rule* of the statute of descents, and requiring such distribution to be made to the next of kin,

whether of the whole or half blood, without regard to the source from which the estate came.

5. Where opposing claimants of personal estate, subject to distribution after administration, interplead each other, the administrator not being a party to the litigation, costs will not be allowed out of the fund in dispute.

APPEAL from the Circuit Court for *Walworth* County.

Mary Jane Kirkendall having died in said county August 8, 1872, under age and without having been married, and her estate having been fully administered, the probate court, in April, 1875, made an order awarding the whole of her personal property, one-half of which came to her from her deceased mother, to *Mary F. Kirkendall*, her paternal grandmother. From this decision, *P. D. Cramer* and his four brothers, who were brothers of said intestate's mother, and claimed that part of the estate which descended from the mother, appealed to the circuit court; and that court having affirmed the decision of the probate court, they appealed from its judgment to this court.

The cause was submitted on the briefs of *A. D. Thomas* for the appellant, and *H. F. Smith* for the respondent.

For the appellant it was argued, 1. That the words in the latter part of sec. 4, ch. 92, R. S. ("unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor, shall be excluded from such inheritance"), are not limited in their application to kindred of the half blood, but modify all the prior provisions of the statute. The basis of our statute of descents is the statute of distribution of Charles II and James II. Reeve on Descents, 26. But most of the states have modified their statutes so far as to keep ancestral property in the line of blood of the ancestor from whom the inheritance came, and this modification has been consistent with that actual bond of union called kinship, which was the basis of ancient society. Maine's Early History of Institutions, 64–66; Maine's Ancient Law (5th ed.), 146

et seq., 197. The principle of ancestral property had its root far back beyond feudal times, and is traceable to the tribal condition of society. In the feudal system, it took the form of primogeniture. 1 Cooley's Black., b. 2, p. 213. The American law of descents, as a general rule, follows the line of consanguinity; and when a person dies intestate, owning real property which came to him by descent, devise or gift from some one of his ancestors, the question is, if there are no lineal descendants, who is the next of kin of the blood of such ancestor, not who is simply next of kin. Bingham on Descents, 315, 327, 328; Reeve on Descents, 391; 4 Kent's Com. (7th ed.), *404–5; 22 Mo., 206; 2 Peters, S. C., 58. The words "next of kin" in subd. 6, sec. 1, ch. 92, R. S., taken in connection with the general clause in the latter part of sec. 4, and the first clause of sec. 4, mean the next of kin of the blood of the ancestor, in all cases of descent, devise or gift; and such next of kin of the blood of the ancestor must be computed by the rules of the civil law. The words in the latter part of sec. 4 are general in their character, and modify all the previous provisions of the statute, excepting where it is specially provided that a person may take as heir though not of the blood of the ancestor. *Perkins v. Simonds*, 28 Wis., 90. The word "blood," in the last clause of sec. 4, is a general word, including both whole blood and half blood. *Beebee v. Griffing*, 14 N. Y., 241, 243, 244; 15 Ark., 588; *Cutler v. Waddington*, 22 Mo., 262; *Mc Williams v. Ross*, 46 Pa. St., 369; *Tillinghast v. Coggeshall*, 7 R. I., 383. The reasoning of these cases confirms the theory that the words "next of kin," in subd. 6, sec. 1, taken in connection with the last clause of sec. 4, mean the next of kin of the blood of the ancestor. This construction gives effect to every word in the statute according to its signification, and is in harmony with the general provisions of the American law of descent. In the customs of Normandy, the rule of excluding half bloods applied to the *uterine* brothers only. When the custom was transplanted to England, the

English judges, having no clue to its principle, interpreted it as a general prohibition against the succession of the half blood, and extended it to consanguineous brothers, and that continued to be the law until it was repealed.    Maine's Ancient Law (5th ed.), 151-2.    There being no reason for making any distinction between the whole bloods and the half bloods, our legislature has placed them on an equality; and it cannot be assumed that the legislature, in revoking the unreasonable rule of the common law in respect to half bloods, has in the same sentence so qualified the revocation as to only narrow the scope of the old rule, and make it more absurd.    The *ancestor* of sec. 4 is not the remote ancestor, but the ancestor from whom the intestate immediately derives title.    *Wheeler v. Clutterbuck*, 52 N. Y., 67; 22 Mo., 263; *Gardner v. Collins*, 2 Peters, S. C., 58.    If, then, the property in question were realty, the part which came by descent from Sarah Jane Kirkendall, sister to the *Cramer* claimants, would go to the appellants as next of kin of the intestate, of the blood of Sarah Jane.    2. By the law of Wisconsin, real and personal property follow in the same line of descent.    The provision of subd. 6, sec. 1, ch. 99, R. S., is plain and broad.    If it applies to any provision of ch. 92, R. S., it applies to them all.    It was competent for the legislature to say that the personal property of the intestate, which came by gift or descent from some one of his ancestors, should go to the next of kin of the blood of such ancestor; and the intention of the legislature should govern, even though it may give an ancestral character to a class of property that has not been regarded as ancestral in former times.    3. Both parties presented their petitions in good faith; and whatever may be the determination of the court, the reasonable costs and expenses of each should be paid out of the estate.

For the respondent it was argued, that the common-law rule of descent of ancestral estate does not prevail in this state, but the rules for the descent and distribution of estates depend

wholly upon our own statutes, and, under these, ancestral estate, as a general rule, descends like any other estate. *Sheffield v. Lovering*, 12 Mass., 490. After analyzing other sections of ch. 92, R. S., counsel argued that the subject referred to in the second clause of sec. 4 is kindred of the half blood; that the word "unless" has the force of "except;" and that the clause following the word "unless," contains an exception to that part of the section preceding that word, the subject of the main proposition being necessarily the subject of the exception. The statute is elliptical, and the words "all those" mean "all those kindred of the half blood." The word "persons" cannot be supplied after the words "all those," because that word is not the subject of the main proposition; and because supplying that word would blot out the exception. The rule of the statute then is, that the kindred of the half blood shall, in general, inherit equally with kindred of the whole blood; but that, as to ancestral estate, half bloods not of the blood of the ancestor from whom the estate came, shall not inherit, while whole-blood kindred of the intestate may inherit, though not of the blood of the ancestor. This construction complies with the rule that one part of a statute must be so construed, if possible, that the whole may stand, and that no part of it shall be superfluous, void or insignificant (Broom's Leg. Max., 247–8, 253; Smith's Com., §§ 501, 502, 647; *Pennington v. Coxe*, 2 Cranch, 33; *Nichols v. Halliday*, 27 Wis., 406); and it is sustained by authority. To this point, counsel cited and commented upon *Beebee v. Griffing*, 14 N. Y., 235; 21 Mich., 229; *Sheffield v. Lovering*, 12 Mass., 490; and *Perkins v. Simonds*, 28 Wis., 90. 2. Whatever may be the rule of descent of *real* estate, the *personal* estate under our statute must go to the next of kin. By the common law of England, nothing was regarded as ancestral estate that did not descend or pass directly and specifically to the heir; as real estate and that species of personal property denominated "heir-looms." It is in most cases impossible to trace back the personal estate

of an intestate, and determine the source from which it came. The statute should not be so construed as to lead to an absurdity or impossibility.  R. S., ch. 99, sec. 1, subd. 6; 2 Burr. Law Dic., "Heir-looms;" *Champlin v. Baldwin*, 1 Paige, 562; *Bogart v. Furman*, 10 id., 496; *Sweezey v. Willis*, 1 Bradf., 495; 2 Greenl. Cruise, 153–5; Smith's Com., §§ 515–519; 1 Kent's Com., *462, note 2; *Jessup v. Stone*, 13 Wis., 466, 469.

Lyon, J.   Mary Jane Kirkendall died under age, not having been married, leaving personal estate which came to her from the estate of her deceased mother, by due course of administration.   She never had a brother or sister.   Her nearest of kin surviving her was her paternal grandmother, the respondent, and her next nearest of kin were her uncles, the appellants, brothers of her deceased mother.   The sole question to be determined on this appeal is, whether her estate shall be distributed to her grandmother or her uncles.   The county and circuit courts resolved this question in favor of the grandmother, and awarded the whole estate to her.

The question will be determined, in the first instance, as though the property in controversy were real estate.   Considered from this standpoint, the estate must, under subdivision 6, sec. 1, ch. 92, R. S., go to the respondent, who is kindred to the decedent in the second degree, to the exclusion of the appellants, who are kindred to her in the third degree; unless the fact that the estate came from the mother excludes the respondent, who is not of the blood of the mother, from the inheritance.

It may be observed at the outset, that subdivisions 7 and 8 of sec. 1, which were considered in *Perkins v. Simonds*, 28 Wis., 90, have no application to this case, notwithstanding the decedent died under age, not having been married, for the reason that her mother left no other issue.   Mary Jane Kirk-

endall, and not her mother, is the person from whom the succession to the estate in controversy is to be traced.

If the respondent is excluded from the inheritance, she is so excluded by virtue of sec. 4 of the same chapter, which reads as follows: "The degrees of kindred shall be computed according to the rules of the civil law; and kindred of the half blood shall inherit equally with those of the whole blood, in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

It is claimed on behalf of the appellants, that this section excludes from the inheritance of ancestral estate all kindred of the intestate who are not of the blood of the ancestor from whom the estate came, without regard to the degree of kinship. This construction excludes the respondent, who is not of the blood of the ancestor.

On the other hand it is claimed on behalf of the respondent, that the rule of exclusion of the section is only applicable to cases where the next of kin to the intestate are of the half blood of the intestate, and not of the blood of the ancestor. This construction gives the estate to the respondent, who, although not of the blood of the ancestor, is not of the half blood of the decedent.

The learned counsel for the appellants has argued with much ability that the leading idea, the foundation principle, of our statute of descents is to confine the descent of ancestral estate to those who are of the blood of the ancestor from whom the same descended. We cannot adopt this view. We find nothing in the statute to sustain it, except the last clause of sec. 4, which was inserted by way of exception to, or limitation of, the preceding clause. To ascertain the controlling principle of a statute, we must look to the body of it — to its general provisions,—rather than to a mere exception to one of its provisions. Looking then to the whole statute — considering.

it in the light of all its general provisions, — it seems very clear to us that its leading, controlling principle is not that intestate ancestral estate shall descend only to those who are of the blood of the ancestor from whom it came; but it is that, where no other provision is made, the same shall descend to the next of kin to the intestate, whether of the blood of such ancestor or not. Sec. 4 must be interpreted with reference to this principle.

After enacting the rule for ascertaining the degrees of kindred, to wit, the rule of the civil law, the section provides that kindred of the half blood shall inherit equally with those of the whole blood in the same degree. This, with perhaps other provisions of the statute, enlarges the application of the principle above stated; for, by the common law, all kindred of the half blood, whether of the blood of the ancestor from whom the estate was derived or not, were excluded from the inheritance. 2 Bl. Com. (Cooley's ed.), 224, 231. Following this provision, and in the same sentence, is the exception or limitation before mentioned, preceded by the word *unless*.

The first clause of the section, which contains the rule for computing degrees of kindred, does not aid the construction of the balance of the section. For that purpose it might as well have constituted a section by itself. The remainder of the section treats only of kindred of the half blood. Their rights and theirs alone are therein defined and limited; and we find nothing in the language of the section which authorizes us to say that any other class of kindred is within its purview. We think the plain grammatical construction of the clauses under consideration is, that kindred of the intestate of the half blood shall inherit equally with those of the whole blood in the same degree, in all cases, *except* that if the estate is ancestral, only such kindred of the half blood as are of the blood of the ancestor from whom the estate came, shall inherit. We find here no other limitation of the rule of subdivision 6, sec. 1, that "if the intestate shall leave no issue,

nor widow, and no father, mother, brother nor sister, his estate shall descend to his next of kin in equal degree," etc.

This is the construction given to sec. 4 in *Perkins v. Simonds*, 28 Wis., 90, although there may be language *arguendo* in the opinion, looking to a broader rule of exclusion. In that case the next of kin of the intestate of the half blood and not of the blood of the ancestor, were excluded from the inheritance of ancestral estate. In this case there are no kindred of the half blood to be affected by the provisions of the section.

The Michigan statute of descents is like ours, and the supreme court of that state has held that where some of the next of kin to the intestate are of the blood of the ancestor, and others of them are not, the statute excludes the latter from the inheritance of ancestral estate. But if none of the next of kin are of the blood of the ancestor, they shall inherit to the exclusion of kindred of the blood in a more remote degree from the intestate. *Ryan v. Andrews*, 21 Mich., 229. There was no question in the case as to the rights of half bloods. Indeed, in its facts the case is not distinguishable from the present case. Whether, in view of all the provisions of the statute, it should be so construed, is a question not necessary to be determined here, and we do not determine it.

Thus far we have considered the case on the hypothesis that section 4 is applicable to the distribution of personal estate which came to the intestate from an ancestor. If applicable, it is by virtue of subdivision 6 of sec. 1, ch. 99, R. S., which provides that " the residue, if any, of the personal estate, shall be distributed in the same proportions, and to the same persons, and for the same purposes, as prescribed for the descent and disposition of the real estate," except, etc.

We think there are insurmountable objections to this hypothesis, except as it may relate to heir-looms, which constitute a very limited class of personal property. These descend to the heir like real estate, and usually retain their distinctive

character and identity. But ordinary personalty has no heritable quality. It does not descend to the heir. The administrator takes the legal title and possession, and the next of kin has only the mere right to it, or to the proceeds of it, on distribution, after the estate is settled and debts and expenses of administration are fully paid. And for the payment of these it is the primary fund. If the property consists of specific chattels, it is subject to sale or exchange by the intestate in his lifetime; and if it comes to the administrator, it is usually sold by him and converted into money, which is paid out and distributed in due course of administration. In the present case there may not be, and probably is not, a specific chattel in the hands of the administrator for distribution, which belonged to the mother of the decedent. If the estate consists of money or choses in action, its identity is usually more speedily lost. Again, personal property is liable to be intermixed with other personal property, and its identity thus destroyed; and money is liable to be lost or added to, or used with other money in such a multitude of transactions that it often becomes impossible to ascertain the source from whence it originally came.

We cannot think that the legislature, when it enacted the statute last above cited, intended or undertook thereby to clothe property so fluctuating in its character, so liable to lose its identity, and so difficult to trace to the source from whence it came, with the qualities of stability and certainty of identification which must necessarily pertain to ancestral estate. We are of the opinion, therefore, that the limitation in sec. 4, ch. 92, upon the descent of ancestral estate, is not applicable to the distribution of intestate personal estate, but that the same must be distributed in all cases in accordance with the general rules of the statute of descents ; that is to say, to the next of kin of the intestate, whether of the half or whole blood, without regard to the source from whence the estate came.

There remains to be considered only a question of costs.

We are asked to direct that the costs be paid out of the estate in controversy. Such directions are sometimes given in actions or proceedings to which the executor, administrator or guardian is a party, to protect him from loss when he has acted in good faith. On this principle the costs of contesting the probate of a will are usually ordered paid out of the estate, without regard to the result of the contest. *Jackman Will Case*, 26 Wis., 364; *Cleaver v. Cleaver*, 39 id., 96; *Downie Will Case*, 42 id., 66. This proceeding is in the nature of an action of interpleader to determine which of the parties are entitled to the fund in the hands of the administrator; and we are aware of no rule of law which authorizes us in such cases to direct the costs of the litigation to be paid out of the fund in controversy.

The judgment of the circuit court must be affirmed.

RYAN, C. J. The grandmother is one degree nearer of kin than the uncles. 2 Blacks., 224; 2 Kent, 422. The respondent will take in preference to the appellants, unless the general rule of subd. 6, sec. 1, ch. 92, R. S., is controlled by the final clause of sec. 4.

Sec. 4, having adopted the rules of computing kindred of the civil law, provides that the half blood and the whole blood, in the same degree, shall inherit equally. Then follows, in the same sentence, an apparent limitation of the provision. The half blood shall inherit equally with the whole blood " unless the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors shall be excluded from such inheritance."

I think that, by all rules of construction, this clause is confined to the provision which it limits, and cannot otherwise affect the general rule of inheritance. It can have no application except in cases of next of kin of the half blood and the whole blood in equal degree ; when it operates to exclude, in

the particular case, the general right extended to the half blood.

*Unless* is equivalent to except ( *Wilson v. Smith,* 3 Burr., 1550), and is here used to introduce an exception to the right of the half blood.   All that follows it in the section is dependent on it and qualified by it, and goes to define the exception which it declares.   In the particular case, " all persons " are not excluded, but " all those;" the relative pronoun relating back and clearly signifying all those of the half blood.   And the only construction of the provision and the exception appears to me to be, that the same degrees of the whole and the half blood shall inherit equally, unless the estate came from an ancestor to the intestate, and the half blood of the intestate is not of the blood of the ancestor, when the whole blood of the intestate who is of the blood of the ancestor, shall be preferred to the half blood of the intestate, in the same degree, who is not.

All the general provisions of the chapter are direct and careful.   The first clause of sec. 4 gives the rule of computation; the second, the rule in favor of the half blood; both by affirmative provisions, distinct, direct and plain.   And I cannot bring myself to believe that it was intended to hide a new rule of inheritance in a clause expressly framed to limit the application of one affirmatively given.   Had it been within the intention of the legislature that, upon intestacy, inherited estates should always follow the blood of the ancestor, the direct precision with which all the other provisions for the rule of inheritance are framed, raises an irresistible presumption that such new rule, like all the other rules, would have been given by direct, distinct and affirmative provision.   And it seems incredible that the legislature, establishing a rule in favor of the half blood of the intestate, could have intended, in a restriction of its application, to establish a new rule in favor of ancestral blood, excluding the blood of the intestate: a rule conflicting in principle with that to which it would be accessory, and out of keeping with the general spirit of our law.

Such violent and inharmonious changes of the law, by construction, carrying the language of a statute beyond what appears to have been in the mind of the legislature, ought not to be favored. And I am of opinion that a sound construction of the final clause of sec. 4 confines it, as a limitation, to the right of the half blood to inherit with the whole blood of the same degree.

I am equally clear that it cannot apply to personalty. Personalty might indeed come by gift from a living ancestor. But title to it cannot come from a deceased ancestor. And as the clause appears to me to be confined to inheritance of what the intestate inherited, I am inclined to hold the word *gift*, coupled with descent and devise, to signify gift in some way taking effect upon the death of the ancestor. *Noscitur a sociis.*

Personalty, except heir-looms or limbs of the inheritance which descend with it to the heir (Co. Lit., 18 b; 1 Williams' Exec., 790), is never inherited. Upon the owner's death, the legal title goes to the executor or administrator. "As estates of inheritance or freehold descendible shall go to the heir, so chattels, as well real as personal, shall go to the executors or administrators." Co. Lit., 388 a. Under a will, the right to a legacy comes by the bequest; upon intestacy, the right to distribution comes by blood. But in both cases, the right is subject to the administration of the estate, and therefore defeasible. Upon default of the executor or administrator, the right becomes a mere right of personal action against him. In any case, when title to personalty comes to legatee or distributee, it comes from the executor or administrator, not from the testator or ancestor. The title of the executor or administrator intervenes between testator and legatee, between ancestor and next of kin. Pending the administration of the estate, the legatee or next of kin has no title. His right is not *jus in re*, but only *jus ad rem*, suspended and dependent on the administration; a right to title from the executor or

administrator, to what may remain upon settlement of the estate. And personalty, coming by either legacy or distribution, has no quality of inheritance. *Schuyler v. Hoyle*, 5 Johns. Ch., 196; *Roorbach v. Lord*, 4 Conn., 347.

This is not only *stricti juris*, but the transitory and changeable nature of personalty appears generally to exclude ancestral character. Practically, it might be not merely difficult, but impossible, to distinguish the personalty of an intestate derived under different ancestors and acquired by himself. And not only the terms used, but the nature of the provision, appear to me to confine the last clause of sec. 4 to realty. Of course as it stands in ch. 92, it expressly relates to realty only. And I cannot think that ch. 99, in providing for the distribution of personalty to the same persons entitled to realty by descent, was intended to give to personalty an ancestral character, which it never had before and which is generally inconsistent with its nature. Indeed it appears to me that the word *inheritance* in sec. 4, essential to the meaning of the provision, *ex vi termini* excludes personalty. Applying the provision to personalty, we might substitute distribution for descent and bequest for devise; but I know of no word or phrase applicable to personalty, which could stand as a substitute for inheritance. For inheritance here expresses not only the thing but the title. And it is an additional reason to me for regarding personalty as essentially non-ancestral, that I know of no word in the terms of the law to signify in relation to it, what inheritance does in relation to realty.

*By the Court.*— The judgment of the circuit court is affirmed.