Melms and others vs. Pfister and others.

MELMS and others vs. PFISTER and others.

*November 28, 1883 — January 8, 1884.*

PUBLICATION of legal notices: *(1) In paper having several editions.* ESTATES OF DECEDENTS. *(2, 4) When special guardian for minors necessary. (3) Vesting of residuary legacy. (4–6) Sale of land by executors, when avoided: When majority of executors may act.*

1. A legal notice was ordered to be published in the "Milwaukee Sentinel." There was no newspaper of that name other than the Milwaukee *Daily* Sentinel, the Milwaukee *Tri-weekly* Sentinel, and the Milwaukee *Weekly* Sentinel, all of which were issued from the same office, the last two being mere adjuncts or republications of the first. The words "Daily," "Tri-weekly," and "Weekly" were in much smaller type than the other words in the respective titles. *Held*, that such words were merely descriptive of different editions

of the Milwaukee Sentinel, and a publication in the Milwaukee *Daily* Sentinel was a compliance with the order.

2. If the probate of a will is void by reason of a failure to appoint a special guardian for minor heirs, it is void only as to such heirs.

3. Where personal property is disposed of by a residuary legacy it does not vest at once in the legatee, but in the executors, by operation of law, subject to distribution, as in case of intestacy.

4. A will giving all the testator's property to his widow was admitted to probate without a special guardian being appointed for minor heirs. The estate being insolvent the widow waived the provision in the will and took that provided by law. *Held,* that the minor heirs could not, on the ground that the will was improperly admitted to probate, avoid a sale of the real estate made by the executors, under a license, for the purpose of paying debts.

5. A sale of land by executors cannot be avoided by the heirs on the ground that one of such executors did not swear to the inventory or the assets and debts.

6. The rule of subd. 3, sec. 4971, R. S., applies to executors; and the heirs cannot avoid a sale of land merely because the license therefor was granted to, and upon the petition of, two only of three executors, especially where the third, being the widow of the testator, had refused to take under the will, and joined in the report of sale and in the deed thereon.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action of ejectment commenced June 15, 1882, by the children and heirs at law of Charles T. Melms, who died February 19, 1869, in and a resident of Milwaukee county, seized and possessed of the land in question (and a large amount of other property), and which land the defendant *Pfister* claims under and by virtue of an executor's sale, and confirmation thereof, made in April, 1870, and an executor's deed thereof, made June 16, 1870. The other defendants claim as grantees and lessees under *Pfister.*

"By his will, made three days before his death, the deceased devised and bequeathed to his wife, her executors, administrators, heirs and assigns, forever, as sole devisee and legatee, all his property, real, personal, and mixed; and he thereby appointed her guardian of all their seven minor

children during their minority, and further appointed her and his brothers William and Leopold his executors, with the expressed desire that, if possible, his business should be continued by his wife, and his debts paid out of the same, for which purpose she would need the assistance and advice of his said brothers. At the time of his death their oldest child was nineteen, and the youngest four years of age.

"March 20, 1869, the will was proven and admitted to probate, and the executors and executrix named in the will were thereupon appointed and qualified, and gave the requisite bond. May 22, 1869, the property was appraised at $174,273, and the land in question at a little over $2,000. November 15, 1869, the widow made application to the county court, and by petition in writing, filed therein, reciting that she had become convinced that the estate was insolvent and would have to be sold for the payment of debts, waived all the provisions made for her in the will, and prayed to have the homestead, right of dower, and allowances under the statute made and set off to her, all of which was done by the county court, November 19, 1869.

"November 23, 1869, the said William and Leopold, as executors, petitioned the county court in writing, representing the condition of the estate, both real and personal; that the debts amounted to $104,000, besides such as were liens on the real estate; that the personal property was only of the value of $32,000; and praying for license to sell the real estate, etc. A special guardian was appointed by the court for each and all the children. The license was granted, and the executors took the requisite oath. March 14, 1870, the executors and widow reported sales made, including the land in question, which were confirmed by the court, March 15, 1870. March 19, 1870, the court ordered the sales to be set aside, and resales to be made, which were made accordingly. April 19, 1870, the executors and widow again reported sales made, including the land in question, to *Guido*

*Pfister*, for $3,075, which was thereupon paid, and the resales confirmed, April 21, 1870, and on June 16, 1870, the executors and executrix gave a deed to *Pfister* in pursuance of the order of confirmation. September 29, 1870, the accounts of the executors were settled, and the moneys distributed by order of the court. September 13, 1871, the widow conveyed her dower right in the land in question to the defendant *Pfister*.

"On the trial a jury was waived, and the court found the facts for the defendants, and, as conclusion of law, directed the complaint to be dismissed."

From the judgment entered accordingly the plaintiffs appealed.

For the appellants there were briefs by *Goodwin & Benedict*, and *Geo. B. Goodwin*, and oral argument by *Mr. Goodwin*.

For the respondent *Pfister* there was a brief by *Ordway & Hoyt*, and oral argument by *Mr. Ordway*.

CASSODAY, J. 1. Was the probate of the will a nullity because the notice of the hearing was published in the "Milwaukee Daily Sentinel," instead of the "Milwaukee Sentinel," as directed in the order? The notice was published in pursuance of sec. 18, ch. 97, R. S. 1858 (sec. 3787, R. S.). The foreman was a proper person to make the affidavit, and it seems to have been in the requisite form. Secs. 67, 70, ch. 137, R. S. 1858 (secs. 4173, 4174, R. S.); *Hill v. Hoover*, 5 Wis., 354. The only objection made to it is that it was not published in the paper directed. The person making the affidavit testified on the trial, in effect, that he was, during 1869, foreman of the news-room of the Sentinel, in the city of Milwaukee; that there was no newspaper printed and circulated, or printed, in that city in that year by the name of the "Milwaukee Sentinel," other than the "Milwaukee Daily Sentinel," the "Milwaukee Tri-weekly

Sentinel," and the "Milwaukee Weekly Sentinel;" that the tri-weekly and weekly were mere adjuncts of the daily; that all were published by the same concern, from the same building, and at the same time, but to different subscribers; and that the words "daily," "weekly," and "tri-weekly" were in much smaller type — not one sixth part as large as the words "Milwaukee" and "Sentinel." From this evidence there appear to have been three editions of the Milwaukee Sentinel, of which the daily was the principal edition and the tri-weekly and weekly were mere adjuncts — in fact, mere republications of the daily. The mere fact that each edition was designated by a word indicating the frequency of its publication, did not make it any the less an edition of the "Milwaukee Sentinel." That was evidently its name in each edition. Another word was added merely by way of description. To hold that there was no newspaper published in Milwaukee in 1869 by the name of the "Milwaukee Sentinel," or that an order directing a notice to be published in that paper was not substantially complied with by a publication in the "Milwaukee Daily Sentinel," would be overlooking the substance of things, and giving an importance to a mere word in very small type that would be altogether too finical for the ordinary business affairs of life. Certainly, titles to real estate should not be disturbed by the technical adherence to a mere word, regardless of its significance, or the connection in which it is used. We must therefore hold that the notice was published in the newspaper directed in the order, and hence that the probate of the will was not a nullity by reason of any defect in the publication of the notice of hearing. This also disposes of a similar objection to the publication of the notice of sale, and hence that need not be further considered.

2. It is urged that the probate of the will was a nullity by reason of the failure to appoint any special guardian for the seven minor heirs of the testator, either at the time of pro-

bate or before, and the case of *O'Dell v. Rogers*, 44 Wis., 136, is relied upon in support of the contention. On the first branch of that case Mr. Justice ORTON said, in effect, that "the publication of notice of the time and place of proving the will . . . was clearly insufficient," but that such decree of probate, and the subsequent proceedings in the execution of the will, were "void only as to such persons in interest as did not appear or assent thereto, or as" had "not since supplied such want of appearance by acts clearly indicating assent thereto or a ratification thereof;" and upon the whole case the judgment of the circuit court affirming the probate of the will, and all proceedings, sales, and titles made under it, was affirmed by this court as to all the plaintiffs therein except Mrs. Hewitt, and as to her it was reversed. Such being the effect of the decision in that case, we cannot hold, upon the strength of it, that the probate of the will in the case before us was a nullity as to all parties, even upon the theory of counsel for the plaintiffs. Assuming that theory to be correct, still, the widow having been named as an executrix in the will, and having, with the two executors named, accepted letters of administration, and she and they having given the requisite bond, and qualified and entered upon such administration, they, and each of them, became bound by the probate, and the widow was thereby necessarily put to her election whether she would take under the will or under the statutes. Secs. 17–19, ch. 89, R. S. 1858 (secs. 2170–2172, R. S.). So, upon the same assumption, the probate of the will was binding upon creditors. If the probate of the will was void for the reason assigned, as to any one, then it was only so as to such minor heirs. But before the end of the year the widow elected to take the provision made for her by law, instead of the provision made for her in the will, and by so doing the will immediately became inoperative as to the real estate, the title of which at once upon such election, if not upon the testator's death, became

vested in his heirs, subject to their mother's right of dower and the payment of the testator's debts. From that time forth, at least, the real estate must be regarded the same as though no will had ever been executed. Had no will ever been executed, the title of the real estate would have vested in the heirs immediately upon the testator's death. The same would have been true had the will not embraced the real estate, but only covered the personal property. With the personal property, however, the effect was entirely different. That would not have descended to the heirs even had there been no will. On the contrary, had there been no will, the legal title and right to the possession of such personal property and the proceeds thereof would have vested in the administrator, and there remained until distributed under the orders of the court in the payment of debts and the expenses of administration, and then, in the final settlement of the estate, the surplus, if any, would be paid to the party or parties entitled. *Estate of Kirkendall*, 43 Wis., 175, 176, 179; *Murphy v. Hanrahan*, 50 Wis., 485; *Marshall v. Pinkham*, 52 Wis., 590. For such personal property, the heirs, by reason of absence of title, could maintain no action at law even as against a stranger. *Ibid.*

This broad distinction between the title to the decedent's real and his personal estate makes it obvious that where personal property is disposed of by a residuary legacy, as here, it does not vest at once and directly in the legatee, but in the executors, by operation of law, subject to distribution, as in case of intestacy. *Philips v. Sleusher*, 3 Pin., 457. In fact, the statute provided that the personal estate of the deceased, which should come into the hands of the executor or administrator, should be first chargeable with the payment of the debts and expenses; and if the goods, chattels, rights, and credits in the hands of the executor or administrator should not be sufficient to pay the debts of the deceased and the expenses of administration, the whole of the real estate

(except, etc., or so much thereof as might be necessary) might be sold for that purpose by the executor or administrator after obtaining license therefor in the manner provided by law. Sec. 6, ch. 100, R. S. 1858 (sec. 3822, R. S.). And any person withholding or converting such personal property was made expressly liable therefor to such executor or administrator. Secs. 8, 10, ch. 100, R. S. 1858 (secs. 3824–7, R. S.). Such being the law, it is very evident that the will in question was properly admitted to probate on any theory, and that the title to the personal property belonging to the estate vested in the executors, and continued to be so vested in the executors after the renunciation of the widow, and until finally distributed under the orders of the court in the settlement of the estate. It is equally certain that as the personal property was insufficient to pay the debts and expenses of administration, it became the duty of the executors, as such, to proceed and obtain license, and sell the real estate as directed in the above statutes. Unless, therefore, there is some other defect in the proceedings, it is apparent that the title to the land in question vested in the defendant *Guido Pfister* by virtue of the executors' sale, and their deed to him thereon.

3. As the widow is named as an executrix in the will, and joined in giving the requisite bond, and qualified as such, it is urged that the sale and deed were void, because she did not also join the two executors in swearing to the inventory, nor to the assets and debts, nor join in the petition for license to sell the real estate, and, further, because her name was not included in the license. She did join with them in making the report of sale, and afterwards in executing the deed of the land in question to *Pfister*. She also gave him her own deed of the same land subsequently. The statute at the time provided, in effect, that in case of an action relating to any estate sold by an executor, in which an heir should contest the validity of the sale, it should not be

avoided on account of any irregularity in the proceedings, provided it should appear (1) that the executor was licensed to make the sale by the county court having jurisdiction; (2) that he gave a bond, which was approved by the judge of the county court, in case a bond was required, upon granting a license; (3) that he took the oath therein prescribed; (4) that he gave notice of the time and place of sale as therein prescribed; and (5) that the premises were sold accordingly, and the sale confirmed by the court, and that they were held by one who purchased them in good faith. Sec. 62, ch. 94, R. S. 1858 (sec. 3919, R. S.).

There is no claim that these requirements were not complied with, unless it be the first, second, and fourth. We have already held that the objection to the notice was untenable, and by so doing have, in effect, held that the fourth provision of that section was complied with. The report of sale shows that the bond was given, and that was confirmed, and hence the second subdivision was complied with. It will be noticed that the failure of the widow to join with the executors in swearing to the inventory, or the assets and debts, are not among the requirements mentioned in that section, and hence, assuming such failures to be irregularities, yet they were not such as would, under that section, invalidate the sale at the suit of the heirs. The only question that remains, therefore, is whether the executors were licensed to make the sale by the county court having jurisdiction, within the meaning of the first subdivision of that section. The words "the county court having jurisdiction" have been construed by this court to mean the county court where the deceased resided at the time of his death, and which had jurisdiction of the estate. *Reynolds v. Schmidt,* 20 Wis., 374; *Mohr v. Porter,* 51 Wis., 498–501. The section referred to is silent as to the contents of the petition for the license, or by whom it should be signed. It would seem, however, that a literal compliance with sec. 2 of that

chapter is not essential to give the county court jurisdiction to grant the license. Thus, in *Reynolds v. Schmidt, supra,* it was held that an omission to state in the petition the value of the personal property coming to the hands of the administrator or executor was not jurisdictional, and would not avoid the sale. Here there is no question but what the court having jurisdiction of the subject matter of the estate appointed three persons, including the widow as executrix, to administer the estate. The widow renounced all benefit under the will. The two executors thereupon petitioned for license to sell the real estate, and obtained it. The widow did not join in the petition, and was not included in the license. For this reason it is urged that the sale was void, and in support of this contention counsel cite *Gregory v. McPherson,* 13 Cal., 578; *Littleton v. Addington,* 59 Mo., 278; *Hannum v. Day,* 105 Mass., 33. The case cited from California was not so ruled by the court, but only by one of its members, and the case is otherwise in conflict with the decisions of this court above cited. The case cited from Missouri does not seem to involve the question here presented. Besides, we have found nothing to indicate that the statute in either of those states, at the time of those decisions, was like the statute we are here considering. The case cited from Massachusetts was under a similar statute, and it was held by the majority of the court, in effect, that all the executors or administrators must join in the petition for the license, and that where there are two or more, and the license is granted to one on his sole petition, it is invalid, and will not enable him or them to maintain a writ of entry to recover the land from the fraudulent vendee of the deceased. That was not against one who had purchased the land in good faith and paid the full consideration under a sale which had been confirmed, as here, and hence the case is clearly distinguishable. Besides, the dissenting opinion of Mr. Justice WELLS, who insisted that the failure of all to

join in the petition was not jurisdictional, and that the granting of the license to a part instead of all was within the discretionary powers of the court, is worthy of consideration.

But we are relieved from further discussing the question upon the authorities by reason of the statutory rule of construction existing in this state at the time of the sale in question, as well as now, to the effect that "all words purporting to give a joint authority to three or more public officers, or *other persons*, shall be construed as giving such authority to a majority of such officers or *other persons*, unless it shall be otherwise *expressly declared* in the law giving the authority." Subd. 3, sec. 1, ch. 5, R. S. 1858 (subd. 3, sec. 4971, R. S.). That rule was applied to arbitrators in *Darge v. Horicon I. M. Co.*, 22 Wis., 691; to commissioners in laying out a highway, in *State v. Goodwin*, 24 Wis., 286; *Williams v. Mitchell*, 49 Wis., 284; to the supervisors of a town, in *McCaffrey v. Shields*, 54 Wis., 649; *Town of Dakota v. Town of Winneconne*, 55 Wis., 525. We see no reason why the same rule should not be applied to executors. The statute certainly did not "expressly declare" that they should all join in the petition, nor all be included in the license; nor does it necessarily include all the executors or administrators by implication; the language is, the "executor or administrator shall present a petition" (sec. 2, ch. 94, R. S. 1858; sec. 3875, R. S.) and may obtain a license (sec. 1, ch. 94, R. S. 1858; sec. 3874, R. S.), and one of the requisites of sec. 62, *supra*, is that "the executor, administrator, or guardian was licensed." These words, "importing the singular number only," are extended and applied to two or more by another statute, and then only by way of construction. Subd. 2, sec. 1, ch. 5, R. S. 1858 (subd. 2, sec. 4971, R. S.). Under these statutes, therefore, we have no difficulty in holding that the heirs cannot avoid the executors' sale merely because the license

was obtained on the petition of only two of them, and gave to them authority to make the sale, especially as the executrix had refused to take under the will, and joined in making the report of sale, and in giving the deed thereon.

*By the Court.*— The judgment of the circuit court is affirmed.