Gundry, Adm'r, etc. vs. Estate of Henry.

GUNDRY, Administrator, etc., Respondent, vs. ESTATE OF HENRY, Appellant.

*March 2 — March 16, 1886.*

ESTATES OF DECEDENTS: WILLS.  *(1) Vesting of residuary legacy.  (2) Executors and administrators: Claim against decedent.*

1. Where personal property is disposed of by a residuary legacy, it does not vest at once and directly in the legatee, but in the executors, by operation of law, subject to distribution, as in case of intestacy.

2. H., a banker, was administrator of the estate of P., and the books of his bank showed a credit to such estate. H. died, leaving his entire estate to his widow, and naming the claimant herein (who was the cashier of the bank) as one of the executors. The claimant qualified as such executor, and also became administrator *de bonis non* of the estate of P. The widow at once took possession of H.'s estate and continued the banking business without change, the claimant acting as manager thereof. As administrator *de bonis non* of the estate of P. the claimant collected moneys and deposited them in the bank to the credit of that estate upon the old account. Afterwards the claimant drew from the bank, in money and notes, the whole amount credited to the estate of P., to pay the same to the persons to whom such estate was ordered to be distributed. While the claimant, as administrator *de bonis non* of P.'s estate, held the notes so drawn from the bank, the widow of H. made an assignment of all her property for the benefit of creditors, and the assignee brought suit to recover such notes from the claimant. Under a stipulation the claimant surrendered the notes to the assignee, without prejudice to any claim he might file against the estate of H. He paid the distributees of the estate of P. in full, using moneys of his own in so doing to the amount of $1,103.83, and filed his claim for that amount against the estate of H. It does not appear that the estate of H. is insolvent. *Held,* that whether the notes drawn from the bank by the claimant were a part of or arose out of the personal property of the estate of H. or not, the claim should be allowed.

APPEAL from the Circuit Court for *Iowa* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is a claim against the estate of William T. Henry,

deceased, first determined in the county court and then on appeal in the circuit court. The circuit court found in effect (2) that, for many years prior to his death, William T. Henry was a banker at Mineral Point; (3) that January 18, 1881, he was appointed administrator of the estate of Martin Phelan, deceased; that, as such administrator, he received a large amount of personal property belonging to Phelan's estate; that the moneys so received were deposited in his own bank, not as a special deposit, but generally, and the account was kept of receipts and disbursements in the matter of said Phelan's estate, on the bank books, as credits and debits with the bank; (1) that William T. Henry died July 2, 1883, (4) and at that time the books of the bank showed the balance due Phelan's estate to be $6,756.02; (6) that Parmele (the claimant) was, at the time, and for many years had been, the cashier of the bank; (5) that said Henry, by his last will and testament, gave all his property, real and personal, to his widow, Emma Henry, absolutely; (6) that July 6, 1883, the widow decided to continue the said banking business, without change in the bank books, and on that day opened the bank as "Henry's Bank," and the accounts of depositors were continued on the bank books as though William T. Henry were still living, and said Parmele continued as the manager of the bank, and such management continued until April 11, 1884; that said Parmele and William T. Henry, Jr., were named as executors in said will, with directions that they should not be required to give any bond; that the will was admitted to probate, September 4, 1883; that said Parmele and Henry, Jr., thereupon accepted the trust, and entered upon the duties of such trust; that October 2, 1883, said Parmele was also appointed administrator *de bonis non* of Phelan's estate, and he forthwith qualified as such, and entered upon the discharge of the duties of such trust, but made no inventory of Phelan's estate; (6) that April 11, 1884, said widow, Emma Henry,

made an assignment of all her property to *Joseph H. Gundry* for the benefit of her creditors; that a few weeks after, said *Gundry* resigned as such assignee, and May 28, 1884, was succeeded, under an order of court, by *Philip Allen, Jr.;* that May 7, 1884, said Parmele and Henry, Jr., resigned as executors of the will of William T. Henry, deceased, and June 10, 1884, said *Philip Allen, Jr.,* was appointed administrator of the estate of William T. Henry, deceased, with the will annexed, and he forthwith duly qualified as such, and entered upon the duties of such trust; (10) that said Parmele, as administrator *de bonis non* of Phelan's estate, never drew out of the bank the said amount so due to its credit; that the same remained in the bank, credited on the books thereof to Phelan's estate; that Parmele, as administrator *de bonis non* of Phelan's estate, collected $50, and deposited that in the bank to the credit of Phelan's estate, April 4, 1884; that between the day last mentioned and April 10, 1884, said Parmele drew out of the bank various amounts in cash, United States bonds, and notes, to the amount of $6,937.17, as funds belonging to Phelan's estate, and the same was accounted for by him in the county court on the settlement of that estate; (11) that one of the charges against Phelan's estate upon the bank-books, and being a part of said last-named sum, was for notes to the amount of $1,435, drawn out of the bank by him April 10, 1884; that Parmele collected one of those notes to the amount of $200, leaving in his hands in notes $1,235; that Parmele drew out said notes to pay those entitled under the final order of distribution in Phelan's estate, upon his accounting therein as such administrator *de bonis non;* (14) that by adding to the $6,756.02 mentioned in the fourth finding the $50 in the tenth finding, the amount was $6,806.02, which included the notes Parmele drew out of the bank as above stated, and left a balance overdrawn by Parmele as administrator *de bonis non,*

and due from Phelan's estate on the books of the bank, of $131.17; (12) that while Parmele, as administrator *de bonis non*, held the $1,235 in notes, mentioned in the eleventh finding, said *Allen*, as such assignee, brought an action of replevin for the same, and at the same time, as such administrator, commenced proceedings in the county court to recover two of the notes which had been given to William T. Henry in his life-time; that eight of said notes had been executed and received by the bank since William T. Henry's death; (13) that the attorney for Parmele and the attorneys for *Allen*, as such assignee and administrator, entered into a stipulation in said replevin suit and proceedings commenced by *Allen* to obtain said notes, to the effect that Parmele should surrender the notes to *Allen*, and that such surrender should not prejudice any claim Parmele might file in the county court against the estate of William T. Henry, and in pursuance thereof the notes were thereupon so surrendered; (15) that Parmele, as administrator *de bonis non* of Phelan's estate, paid to the parties entitled thereto, on the distribution of said Phelan's estate, the full amount that the said county court found to be due from William T. Henry as administrator, and from himself as administrator *de bonis non;* that, in making such payments, in place of said notes so surrendered to *Allen* he paid out his own money to the amount of $1,103.83, being the difference between said $1,235 of notes mentioned in the eleventh and twelfth findings and the $131.17 overdrawn mentioned in the fourteenth finding; (7) that in March or April, 1884, two of the heirs of Phelan's estate demanded of Parmele a settlement of that estate; that pursuant to that demand Parmele filed an account therein in the county court, purporting to show the transactions of William T. Henry and himself, as administrators of Phelan's estate; (7, 8) that June 10, 1884, the first day appointed for the hearing of said account, said *Allen*, as such administrator and assignee, appeared

with his attorneys, and filed objections to the allowance of Parmele's account in Phelan's estate, but subsequently, and before the final hearing, withdrew the same; (9) that November 11, 1884, a final order was made by the county court in Phelan's estate, whereby it was determined that the balance due Phelan's estate from William T. Henry at the time of his death, after deducting credits, was $12,785.85, and the same was charged to Parmele as administrator *de bonis non* of Phelan's estate; and was made up of $7,187.68 cash, $2,596.92 notes, and $3,001.25 of receipts held by Henry, at the time of his death, for advances to heirs; that Parmele was entitled to a credit, for sundries, $2,012.58; also $3,001.25 by way of said receipts, and that he still had in his hands $4,529.24 cash, and $744.85 made up of four notes named.

As conclusions of law, the circuit court found, in effect, that said Parmele should be allowed said sum of $1,103.83 as against William T. Henry's estate, with interest thereon from November 3, 1884, when his claim was filed in the county court; that the judgment of the county court disallowing said claim, and against said Parmele for costs, be reversed; and directed the administrator to pay said claim, the same as other claims allowed against said William T. Henry's estate in the course of administration; and further directed that a certified copy of the judgment be filed in the county court, dated April 3, 1885. From the judgment entered in accordance with said findings, and the whole thereof, the said *Allen*, as such administrator of said estate of William T. Henry, appeals.

Since this appeal, the death of Parmele has been suggested in this court, and his administrator, *Joseph H. Gundry*, has been substituted as plaintiff in his stead.

For the appellant there was a brief by *Wilson & McIlhon*, and oral argument by *Mr. Wilson*.

For the respondent there was a brief by *J. M. Smith* and

*Reese & Carter*, and oral argument by *Mr. Smith*. They argued, among other things, that the $1,103.83, advanced by Parmele in the settlement of Phelan's estate, went to pay the debt of Henry to such estate, and the amount should therefore be repaid to Parmele out of the estate of Henry. *Morgan v. Hammett*, 23 Wis. 30; *Cole v. Malcolm*, 66 N. Y. 363; *Townsend v. Whitney*, 75 id. 425; *McCormick's Adm'r v. Irvin*, 35 Pa. St. 111.

CASSODAY, J. The only question presented is whether Parmele was entitled to recover from William T. Henry's estate the $1,103.83 which he, as administrator *de bonis non* of Phelan's estate, was compelled to pay over to the distributees of Phelan's estate from his own money, and which amount was never received by him from William T. Henry's estate. William T. Henry was the administrator of Phelan's estate when he died. At that time there was to the credit of Phelan's estate, on the books of Henry's bank, $6,756.02. As appears from the record, William T. Henry left a will by which he gave all his property, real and personal, to his widow absolutely. The will was admitted to probate, September 4, 1883. Parmele and Henry, Jr., were named as executors therein, but with directions not to require them to give any bond. They qualified as such, and accepted the trust, and entered upon the duties of their office. It was assumed on the argument that because the widow was the sole devisee and legatee in her husband's will, therefore his real and personal estate vested in her absolutely and immediately upon her husband's death. But the will was ineffectual, even as to the real estate, until admitted to probate. *Newman v. Waterman*, 63 Wis. 616. Whether, upon being admitted to probate, it *ipso facto* vested the title to the real estate immediately in the widow, is immaterial here. This court has held "that where personal property is disposed of by a residuary legacy, as here, it does

not vest at once and directly in the legatee, but in the executors, by operation of law, subject to distribution, as in case of intestacy." *Melms v. Pfister*, 59 Wis. 192. We have no doubt of the correctness of such holding. It follows that upon the probate of the will the legal title to the assets of the bank, and all the other personal property of William T. Henry, at once vested in the executors named; and upon such probate the same, probably by way of relation, took effect as of the death of the testator.

October 2, 1883, Parmele was also appointed administrator *de bonis non* of Phelan's estate. From that time until he resigned as executor of the estate of William T. Henry, May 7, 1884, Parmele occupied the position of double trustee of the personal property left by William T. Henry,—for that property was in part for the benefit of Phelan's estate,—and, in addition to this, was the manager of the bank. He collected $50 for Phelan's estate, and deposited it in the bank to the credit of that estate. He drew nothing from the bank by reason of what was due from Henry's estate to Phelan's estate until in April, 1884, when he drew out for Phelan's estate, in money, United States bonds, and notes, the amount which stood to the credit of that estate on the books of the bank, and $131.17 in addition. The new administrator contested his right to $1,235 of the notes so drawn out. It is conceded that he drew out $131.17 more than he was entitled to on any theory, and the court in effect so found. It is insisted, however, that he was entitled to the balance so drawn out, of $1,103.83. Some of the notes had been taken after William T. Henry's death, and apparently upon the assumption that the legal title of all the personal property was in the widow. A suit was commenced in the circuit court and proceedings instituted in the county court to reclaim them. Both the suit and the proceedings were settled by stipulation, under which the notes were all surrendered to the new administrator upon

the agreement that such settlement and surrender should not prejudice Parmele's claim herein against William T. Henry's estate. The notes being in the bank were presumptively a part of or traceable to William T. Henry's estate, even though they had been taken in a new form, under a misconception as to who held the legal title to the assets of the bank. Of course, if they were not traceable to William T. Henry's estate, but were directly traceable to the separate estate of Mrs. Henry, derived entirely from a different source, then they could not have been properly appropriated by William T. Henry's executors to pay Phelan's estate. But, assuming that they were traceable to or arose from the personal property belonging to William T. Henry's estate, then Parmele, as one of the executors of that estate, had the right to draw out the funds in payment of Phelan's estate, and hold the same as administrator *de bonis non* of that estate. But, assuming that some of the notes so drawn out were the separate property of Mrs. Henry, yet that would not alter the case, for those notes were surrendered to her assignee. The fact would nevertheless remain that William T. Henry's estate was still indebted to Phelan's estate in the sum of $1,103.83, with interest, and we perceive no good reason why it should be disallowed. Especially is this so, since the record before us does not warrant the conclusion that William T. Henry's estate is insolvent.

Under the view we have taken of the case the question of unlawful preference under ch. 349, Laws of 1883, does not arise. It is not Mrs. Henry's estate, but William T. Henry's estate, that we have to deal with.

*By the Court.*— The judgment of the circuit court is affirmed.